HAROLD SHORES and LLOYD SHORES d/b/a SHORES BRO-
THERS AND BITUMINOUS CASUALTY CORPORATION

*v.*

TRAVIS SHORES.

395 S.W.2d 388.

(*Nashville,* December Term, 1964.)

Opinion filed October 22, 1965.

PAUL E. PARKER, Knoxville, O'NEIL, JARVIS, PARKER & WILLIAMSON, Knoxville, of counsel, for plaintiff in error.

JARED MADDUX, Cookeville, MADDUX, CAMERON, & JARED, Cookeville, of counsel, for defendant in error.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This is a Workmen's Compensation suit in which the trial judge found in favor of the injured employee on an agreed compensation rate of $29.30 per week. He found that the employee was entitled to temporary total

disability benefits for a period of twenty-six (26) weeks beginning June 7, 1964, this being the date the payment of the benefits, which were paid from the date of the accident until that date, terminated. The court further awarded the defendant in error permanent partial disability benefits for two hundred sixty (260) weeks commencing December 7, 1964, based on a finding that the defendant in error had permanent partial disability to the extent of sixty-five (65%) per cent to the body as a whole.

Other awards were made which are not questioned. Exceptions were duly made; a motion for a new trial was filed and overruled; and an appeal was perfected to this Court, where very fine briefs have been filed and arguments heard, and after spending some days studying the matter we are now in a position to decide the case.

On August 12, 1963, the defendant in error was working as a bulldozer operator and logger in a wooded area, and, while operating a gasoline chain saw, a tree which he was sawing jumped its stump and this crushed the front part of his foot. As a result of this the defendant in error lost the toes and the distal ends of the metatarsal bones of his right foot. This foot was then operated on and healed to a certain extent, but it continued to break out and run, and seepage or drainage from the foot and the stump of the injured foot gives off very offensive odors. The defendant in error testified that as a result of this injury he was one hundred (100%) per cent disabled and continued to have pain, etc., as a result thereof. General practitioners who were called in as experts testified that after talking to the employee they concluded that there was an injury to the body as a whole from fifty (50%) to eighty (80%) per cent. The ortho-

pedic specialist who treated this man after this injury testified that "He lost actually in terms of cubic content, somewhere around 10 or 15 percent. For practical purposes he lost what amounts to the loss of his toes * * *" As a result of this disability the doctor testified that he had lost seventy-five (75%) per cent of the use of the foot and that he could now do farm work and logging work of a general nature.

The prime question presented by this suit is whether or not the employee's disability should be assessed to the foot or to the body as a whole in view of an amendment passed by the Legislature in 1963 to sec. 50-1007(c), T.C.A. This Section (50-1007, T.C.A.) sets out the schedule of compensation benefits for the loss of various members of the body and provides one hundred and twenty-five (125) weeks for the loss of a foot. The last paragraph of this Section (50-1007[c]) reads:

"All other cases of permanent partial disability not above enumerated shall be apportioned to the body as a whole, which shall have a value of four hundred (400) weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury. Compensation for such permanent partial disability shall be subject to the same limitations as to the maximum and minimum as provided in subsection (a). *The benefits provided by this paragraph shall not be awarded in any case where benefits for a specific loss is otherwise provided in this title.*" (Emphasis ours.)

The last sentence, above quoted, is the 1963 amendment to this Act. Prior to this amendment in view of the language above quoted, which precedes the sentence italicized therein, the majority of decisions of this Court

have reached the conclusion that if the effects of the loss of a member extend to other parts of the body and interfere with their efficiency the schedule allowance for the lost member is not exclusive. Some such cases are *Plumlee v. Maryland Casualty Company,* 184 Tenn. 497, 201 S.W. 2d 664; *Claude Henninger Co. v. Bentley,* 205 Tenn. 241, 326 S.W.2d 446; *McKenzie v. Campbell and Dann Mfg. Co.,* 209 Tenn. 475, 354 S.W.2d 440; *United States Fidelity & Guaranty Co. v. Towsend,* 206 Tenn. 592, 335 S.W. 2d 830; *Hix v. Cassetty,* 186 Tenn. 343, 210 S.W.2d 481; *Dickey Mfg. Co. v. Moore,* 208 Tenn. 576, 347 S.W.2d 493; and many others. All of these cases were rendered when the Act contained the language quoted from the Act above which immediately precedes the 1963 amendment and did not have any such provision in the Act.

Prior to the quoted language above in the Act with reference to the body as a whole clearly when there was a clean-cut loss of a member of the body the courts as a rule limited the benefits to the scheduled allowance. Some of such cases are *Hooper Tire Co. v. Maneese,* 164 Tenn. 51, 45 S.W.2d 1071; *Coker v. Armco Drainage & Metal Products Co.,* 192 Tenn. 10, 236 S.W.2d 980; and others. Long before any of the quoted portion of the Act was in the Act, this Court, in the landmark case of *Russell v. Virginia Bridge and Iron Co.,* 172 Tenn. 268, 111 S.W.2d 1027, wherein the injured man was totally and permanently disabled by his injury, allowed compensation for the injury to the body as a whole. This case has been followed and cited in many of our cases since, and when followed it is with the admonition that the injury to a specific member was so severe as to cause the employee total disability.

██ Since the 1963 Act the present case comes clearly within the reasoning of this Court in other related cases, as in *Black Diamond Collieries v. Carden,* 150 Tenn. 336, 265 S.W. 541; *Catlett v. Chattanooga Handle Co.,* 165 Tenn. 343, 55 S.W.2d 257; and *Phillips v. Diamond Coal Mining Co.,* 175 Tenn. 191, 133 S.W.2d 476. Where there is an injury which disables the body, amputation of a member is merely an incident to, not the cause of, the disability. Scheduled compensation for specific injury is in the nature of damages or indemnity for the physical or functional loss and is to be awarded even though there is no loss of earning power or wages, and without regard to the extent of the disability suffered.

It must be remembered that the Compensation Act is a creature of the Legislature and when the Legislature has enacted these things and then makes a specific instruction as to how the court should find, the court, interpreting and construing what the Legislature meant, must take into considerations the past history of what has happened and must likewise construe this along with the language which immediately precedes this 1963 amendment, above quoted. When the Legislature, prior to the 1963 amendment, provided for both total disability and the specific loss of a member without expressly saying that either shall be exclusive then under the direction in the Act and the interpretation of the courts for a liberal construction, it is nothing but logical to say when the facts and evidence showed an injury to the body as a whole it should be allowed.

██ When though the statute expressly provides for scheduled allowances, and, when the Legislature says that these scheduled allowances are exclusive or are in lieu of all other benefits, the question of adding the in-

juries to the body as a whole does not come under these cases that are discussed, because here by the very Act of the Legislature it has provided that injuries to the body as a whole shall not be awarded in a case where the benefits for specific loss are otherwise provided. Thus it is, since the injury here is for a specific loss, part of the foot and the toes, the courts are not allowed to then award injuries to the body as a whole. The Act plainly so provides and a line must be drawn somewhere under this Act, and, as we see it under the Act, the line must be drawn here, that is, when there is a specific loss provided in this Act then this becomes the total amount for which benefits can be allowed.

Therefore, in view of our interpretation of the 1963 amendment to the Act, and under the proof herein, the maximum is fixed at seventy-five (75%) per cent for the loss and use of the foot and the scheduled amount of time for the loss and use of a foot is one hundred and twenty-five (125) weeks, so recovery on this feature of the case must be limited to that, that is, seventy-five (75%) per cent for the loss of the use of the foot.

The next question that arises is whether or not the trial judge erred in allowing temporary total disability for twenty-six (26) weeks. The argument in support of this contention on behalf of the employer and its insurance carrier is largely based around the fact that there is no specific prayer or averment in the petition for compensation. We think though that giving the petition a liberal interpretation in favor of the employee the court was within its rights to grant temporary total disability when the petitioner prayed that the court grant him all additional weekly benefits that he would be entitled to receive under the Act and things of the kind.

Of course, "temporary total disability" refers to the employee's condition while disabled to work and until he recovers to the extent that the nature of his injuries permits his return to work. Such an allowance for disability is separate and distinct from any other of the statutory types of disability. Thus it is that we feel in view of the fact that this injury was still in the process of healing, it was perfectly proper for the trial judge to fix a reasonable period in addition to what had already been paid for a complete healing of this injury. We cannot say therefore that twenty-six (26) weeks is an excessive amount of time. We feel that under the facts here the man should be entitled to some temporary total disability for a complete healing of this foot and that a sufficient length of time has been allowed so that the man can get back to earning some wages. It is true the orthopedic specialist discharged him and stated he was able to go back to work at the date of the beginning of this temporary total disability. The trial judge in evaluating all the evidence, however, concluded he was not thus able and allowed this temporary total disability for this additional time. This assignment of error must be overruled.

In view of our conclusions herein in reference to the effect of the 1963 amendment to this Act it is unnecessary for us to consider the assignments with reference to the evidence of the testifying physicians herein.

After having thoroughly considered all matters, the judgment of the trial court must be affirmed as modified and an order may be drawn in conformity with this opinion.