### Carl R. CUMMINGS
### v.
### ROYAL INDEMNITY COMPANY a/k/a Royal Globe Insurance Company.

Civ. A. No. 5822.

United States District Court
E. D. Tennessee, N. D.

Jan. 17, 1967.

Robert T. Mann, Privette, Mann, Prince & Smith, Knoxville, Tenn., for plaintiff.

Paul E. Parker, O'Neil, Jarvis, Parker & Williamson, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This is an action for workmen's compensation benefits. Carl R. Cummings, a man 36 years of age with a wife and two children, with a fourth grade education but who cannot read and write, has done labor work all of his adult life. On November 19, 1964, he was severely injured while employed at the marble quarry of John J. Craig Company at Knoxville. His injury was sustained when he fell off a ledge and landed on his left shoulder or left part of his body a distance of seven or eight feet below. As a proximate result of his fall, he sustained a multiple comminuted fracture of the bones in his left arm which resulted in four operations, particularly on the elbow. In addition to the fracture and injury of his left elbow, he sustained injuries to his ankle, to his left side and to his left shoulder from all of which he has suffered and still suffers pain

and anxiety which at times causes him to become nauseated and otherwise mentally and physically disturbed.

The Court is convinced, and finds as a fact, that the severe injuries sustained by this employee have affected his entire nervous system, as a result of which he sleeps only intermittently during sleeping hours. Prior to this injury his average night of sleep was around eight hours, now it is around three to five hours. This man has not received superficial injuries. They are not the kind of injuries which a trained orthopedic can properly assess upon only examination by using a medical chart prepared by representatives of the American Medical Association or other like reputable organizations. The injuries of plaintiff are more grave than would result from the simple breaking of a bone or two in the arm.

The attorneys during the trial have explained the effects of the 1963 amendment to the Workmen's Compensation Law which deals with injuries to specific members of the body. They have cited and explained the opinion and decision in the case of Shores v. Shores, Tenn., 395 S.W.2d 388, prepared by Mr. Chief Justice Burnett interpreting the meaning of that Act. Although the Court had previously read the case, its significance in relation to the facts in this case had not appeared until the Court heard the argument of Mr. Paul Parker, the attorney for the defendant in the present case.

The Supreme Court appears to have held in that case that when an employee receives an injury to a specific member of his body, even though the injury may affect other parts of the body, the employee is entitled only to the compensation fixed by the Act covering the specific injured member. The exception to that rule seems to be that if the injury to a specific member is so serious that it totally and permanently disables the employee, he is entitled to have his benefits fixed on the basis of injury to the body as a whole rather than to the specific member.

This Court, in cases tried prior to the decision in the case of Shores v. Shores, supra, has held that if the injury to the specific member affected other parts of the body, the employee was entitled to have his benefits fixed upon the basis of injury to the body as a whole rather than to a specific member. In the opinion of the Court the ruling of Mr. Chief Justice Burnett in the Shores case does not deprive plaintiff here of the right to have his disability benefits fixed on the basis of injury to the body as a whole. The Court feels this is true because in addition to the grave and serious injuries sustained by him to his left arm which is a specific member under the Act, he also sustained injuries to his left ankle, to his shoulder, his side, none of which are specifically named in the Act. These injuries combined or in conjunction with injuries to his left arm have caused extreme nervousness, nausea, and excessive loss of sleep and have resulted in abnormal and unusual effects on the body as a whole. McKenzie v. Campbell & Dann Mfg. Co., 209 Tenn. 475, 354 S.W.2d 440.

Doctor Proffitt, plaintiff's treating physician, examined him on the day of his injury which, as previously indicated, was November 19, 1964. He described the injuries in detail. X-rays were made which revealed the fractures of the bones of his arm. He testified to the necessity of the four operations which were performed, to the limited motion in his left arm, and that another operation may be necessary to the left elbow which would involve the installation of a steel mechanism in the socket of the elbow to hold the bone. This is technically described as a prosthesis, an artificial appliance, which may create additional problems because of the human body's aversion to foreign bodies.

Doctor Proffitt estimated plaintiff's disability at 50% which the Court construed as 50% to the body as a whole.

Doctor Carlson examined plaintiff on one occasion only for the purpose of

evaluating his disability. He testified that there was atrophy of the entire left arm but was of the opinion that there was no functional defect in the left ankle. He found nothing wrong with the body except the left arm. He placed the disability to the arm at 40% permanent partial. Although the Court has great respect for Dr. Carlson's professional evaluation, it does not feel bound thereby under the facts of this case.

Plaintiff has been paid all of the workmen's compensation benefits to which he was entitled on account of his absence from work by reason of the injuries. He was off from work from the date of the injury until the day after Labor Day, 1965. He was again off from February 23, 1966 to June 13, 1966. Through the magnanimity of his employer he has worked since June 13, 1966 until the present time, and is still working. He works as a marble sawyer which involves operation of the marble machines. At the time of his injury he received $1.50 per hour. He now receives $1.55 per hour because of an across-the-board raise in wages. For an employee who is well and able, his present job would involve the shoveling of about a ton of sand each shift. Plaintiff cannot do this work. His job also involves the bracing of slabs which he cannot do. His job infrequently involves climbing to adjust the belts which run the marble machines; this he cannot do. These jobs are done by his fellow employees.

The proof shows that if it were not for the beneficent attitude of the John J. Craig Company, plaintiff would not have a job. If something should happen causing his severance from that company, he would be what some of the Courts have described as "an odd lot and not fit for general employment." See Greeneville Cabinet Company v. Ramsey, 195 Tenn. 409, 414, 260 S.W.2d 157.

The Court is of the opinion and finds as a fact that plaintiff has sustained 50% disability to his body as a whole.