Cora Pauline BLACKBURN, Plaintiff-Appellee,

v.

**ALLIED CHEMICAL CORPORATION and The Travelers Insurance Company, Defendants-Appellants.**

Supreme Court of Tennessee.

May 26, 1981.

Bill W. Petty, Knoxville, for plaintiff-appellee.

Richard W. Krieg, Knoxville, for defendants-appellants.

## OPINION

HARBISON, Chief Justice.

In this worker's compensation case, the employer and its insurer appealed from an award of permanent total disability.

It is conceded that the employee sustained a compensable injury on January 23, 1978, when she fell at work. She fractured the head and neck of her left femur. At that time she was forty-nine years of age.

Appellee's injuries were treated by Dr. Charles A. Gouffon, an orthopedic surgeon. He reduced the fracture by surgery, inserting a metal pin into the femur to hold the fragments together for healing. He testified that the employee reached maximum recovery on or about March 13, 1979. In a letter he advised the workmen's compensation insurer that the employee could perform only sedentary types of work. He testified that she could perform only with difficulty work which involved frequent moving about or change of position.

The employee was also examined by Dr. Martin Baker, an orthopedic surgeon, on two occasions in the spring and summer of 1979. He testified that the employee's left leg had become shorter by one inch than the right and that she walked with a noticeable limp. She complained of considerable back pain, and Dr. Baker testified that injuries to the hip frequently caused limping and that this in turn could cause discomfort and pain in the back.

Dr. Baker also testified that the surgical pin used to reduce the fracture of the femur protrudes above the articular surface of what remains of the head of the femur and is "obviously scratching in the socket portion."

Both Dr. Baker and Dr. Gouffon were of the opinion that the employee would require further surgery in the future. They expressed the opinion that the employee had sustained fifty percent permanent partial disability of the left leg or twenty-five percent permanent partial disability to the body as a whole. Both stated that she may have to have a hip joint replacement in the future.

Appellee herself testified that her leg stayed sore and was painful at all times and that she had a great deal of pain in her back. She testified that she is unable to bend at the waist, cannot completely dress herself without aid and that she cannot sit still for long periods at a time. She was of the opinion that she was totally disabled from work and stated that Dr. Gouffon had so advised her.

Considering all of the testimony, lay and expert, the trial judge stated:

"This lady suffered back pain as a result of this injury, the screw that is used to fix this is described as a socket hubbit which is certainly the body as a whole and this lady is permanently and totally disabled. The doctors say that she is getting worse and that's consistent with it. They say she will continue to get worse. Probably have to have this hip replaced. Certainly consistent with her testimony in this case."

It is the insistence of appellants that the injury to the employee was confined to her left lower extremity, and that therefore her recovery must be limited to that provided in the statutory schedule for loss of a leg, T.C.A. § 50–1007(c). Appellee contends that the trial judge correctly found that she had sustained injuries that were not confined to the left lower extremity and that she was entitled to the maximum statutory benefits.

In the opinion of the majority of the Court, there is material evidence to sustain the finding of the trial judge that appellee's injury and the results of necessary surgery were not confined to the left lower extremity. At a minimum, these appear to extend into the hip socket, and there is evidence that they may extend into other parts of the trunk of the body. This Court has previously construed the meaning of "extremity" with respect to an injury to an arm and shoulder. It held that the term did not include portions of the trunk of the body. *Continental Insurance Companies v. Pruitt*, 541 S.W.2d 594 (Tenn.1976). The same rationale is applicable here. The sur-

gical pin used to reduce the fracture in this case protrudes into the hip socket, just as the injury in *Pruitt* extended into the rotator cuff, or portion of the shoulder. The hip socket itself is part of the pelvis; the head of the femur fits into it in a ball-and-socket joint. The lower part of the pelvis, a cavity called the acetabulum, envelops the head of the femur. The acetabulum itself, into which the surgical pin protrudes and causes pain, is not a part of the femur or of the left lower extremity. *See* 1B, R. Gray, *Attorneys' Textbook of Medicine* § 8.00 (3d ed. 1980); *Stedman's Medical Dictionary* p. 647 (4th ed. 1976).

While the issue was not raised in the briefs of the parties, in a concurring opinion filed in this case it is suggested that the Court should overrule or modify prior decisions that where an injury is in fact confined to a scheduled member, only scheduled benefits may be awarded. *Shores v. Shores*, 217 Tenn. 96, 395 S.W.2d 388 (1965); *Genesco v. Creamer*, 584 S.W.2d 191 (Tenn. 1979), and other cases cited therein.

Although as pointed out in the separate opinion of Justice Brock, the injury in *Shores v. Shores, supra,* resulted only in permanent partial rather than total permanent disability, nevertheless the Court gave an authoritative interpretation to a 1963 amendment to the worker's compensation statute, T.C.A. § 50–1007(c). In *Chapman v. Clement Bros. Inc.*, 222 Tenn. 223, 435 S.W.2d 117 (1968), the matter was re-examined and the Court was asked to overrule the *Shores* case, and to hold that even though an injury was to a scheduled member, benefits need not be confined to the schedule. This the Court expressly declined to do. The Court alluded to the matter again in *Continental Ins. Companies v. Pruitt*, 541 S.W.2d 594, 597 (1976), and again examined it in some detail in the case of *Genesco v. Creamer*, 584 S.W.2d 191 (Tenn.1979). In the latter case the Court held that where injuries were confined to a scheduled member, only scheduled benefits could be awarded, even though there was a claim of total permanent disability rather than merely partial disability.

Therefore, the majority are of the opinion that the interpretation of the statute made in the *Shores* case and followed in subsequent cases should not now be altered unless the General Assembly sees fit to make such a change. As stated by the Court in *Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn.1977):

> "The legislature is presumed to know the interpretation which courts make of its enactments; the fact that the legislature has not expressed disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction, especially where the law is amended in other particulars, or where the statute is re-enacted without change in the part construed."

The construction given to the worker's compensation schedules by this Court is consistent with that given to an important federal statute in the recent case of *Potomac Electric Power Co. v. Director, Office of Worker's Compensation Programs*, —— U.S. ——, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980) (injuries specifically scheduled in Longshoremen's and Harbor Workers' Compensation Act must be compensated in accordance with schedules and not pursuant to more general provisions of statutes).

Since we are of the opinion that appellee's initial fracture and the subsequent surgery resulted in injuries extending beyond a scheduled member, we are of the opinion that there is material evidence to support the award of the trial court of disability to the body as a whole.

The judgment of the trial court is affirmed at the cost of appellants. The cause is remanded to that court for enforcement of the judgment and for any further orders which may be necessary.

FONES and COOPER, JJ., concur.

BROCK and DROWOTA, JJ., file separate concurring opinion.

BROCK, Justice, concurring.

In the trial court and in this Court the defendant argued that plaintiff's injury was limited to her left leg and, therefore,

the maximum recovery that may be awarded to her is the 200 weeks of compensation provided by T.C.A., § 50–1007(c), for loss of use of a leg. On the other hand, the plaintiff contends that the trial judge correctly found from the evidence that the plaintiff's disability to work was total and permanent, entitling her to 400 weeks of compensation for permanent total disability to the body as a whole, as provided by T.C.A., § 50–1007(d), (e).

In cases of this kind it is very important to keep in mind that the legislature has divided the disability resulting from compensable injuries into four categories, viz. (1) temporary total disability, (2) temporary partial disability, (3) permanent partial disability, (4) permanent total disability. The benefits provided for each of the four types of disability are set out in § 50–1007 of Tennessee Code Annotated; subsection (a) provides the benefits for temporary total disability, subsection (b) provides the benefits for temporary partial disability, subsection (c) provides benefits for permanent partial disability, and subsection (d) provides the benefit for permanent total disability. This legislative scheme of treating each of the four kinds of disability as separate and distinct classes of disability and of providing separately the compensation for each class by independent and unrelated provisions was acknowledged by this Court in *Redmond v. McMinn County,* 209 Tenn. 463, 354 S.W.2d 435 (1962). However, it must be acknowledged that some of our cases have blurred these legislative distinctions, especially as between permanent *partial* disability and permanent *total* disability.

As noted above, subsection (c) deals only with permanent *partial* disability. After specifying the compensation to be awarded for permanent partial disability due to injuries to certain "scheduled members of the body," such as loss of a leg, loss of an arm, loss of an eye, *et cetera,* subsection (c) of T.C.A., § 50–1007, provides in the last paragraph thereof that:

"All other cases of permanent *partial* disability not above enumerated shall be apportioned to the body as a whole, which shall have a value of four hundred (400) weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury. Compensation for such permanent *partial* disability shall be subject to the same limitations as to maximum and minimum as provided in subsection (a) .... The benefits provided by this paragraph shall not be awarded in any case where benefits for a specific loss is otherwise provided in this title." (Emphasis added.)

The last sentence was added by an amendment enacted in 1963 and has since been known in the literature as "the 1963 amendment." The 1963 amendment has been construed to mean that if the employee's injury is restricted solely to one of the "scheduled members" listed in subsection (c) and if the disability resulting from that injury is less than total disability his compensation must be limited to that provided in subsection (c) for the scheduled member; the disability cannot be apportioned to the body as a whole and compensation awarded on the latter basis. *Shores v. Shores,* 217 Tenn. 96, 395 S.W.2d 388 (1965).

Prior to the *Shores* decision, this Court consistently held that an employee who sustained permanent and total disability to work was entitled to the compensation provided by subsection (d) of T.C.A., § 50–1007, for *permanent total* disability, although the injury causing the disability was limited to one of the body members set out in the schedule employed in subsection (c) in providing the compensation to be paid for *permanent partial* disability. *Russell v. Virginia Bridge & Iron Co.,* 172 Tenn. 268, 111 S.W.2d 1027 (1938); *Plumlee v. Maryland Casualty,* 184 Tenn. 497, 201 S.W.2d 664 (1947); *Johnson v. Anderson,* 188 Tenn. 194, 217 S.W.2d 939 (1949); *Central Surety & Ins. Corporation v. Court,* 162 Tenn. 477, 36 S.W.2d 907 (1931); *Kingsport Silk Mills v. Cox,* 161 Tenn. 470, 33 S.W.2d 90 (1930).

In the *Russell* case the plaintiff suffered injuries to his foot and ankle, "schedule members" for which permanent *partial* dis-

ability compensation is provided in T.C.A., § 50–1007(c). The trial court held that the plaintiff was entitled only to the compensation provided by the permanent *partial* disability schedule of T.C.A., § 50–1007(c), for the loss of a foot; but this Court reversed and awarded benefits for permanent *total* disability, construing the statute as follows:

> "It is not uncommon to see a man without a hand or a foot who is very active and capable of engaging in a gainful occupation. Such a person was not rendered totally incapacitated by the loss of his hand or foot, and it was to this class that remuneration for the specific loss of a member was intended to apply. On the other hand, where an employee, as the result of an injury, *is disabled to the extent that he cannot work at an occupation which will bring him an income,* he is entitled to the compensation provided therefor; *and it is immaterial whether his condition resulted from an injury primarily to his arm, hand, leg, foot, head, or some other member of his body."* (Emphasis added.) 111 S.W.2d at 1031.

In arriving at this interpretation of the statute, the Court relied upon its prior decisions in the *Central Surety & Ins. Corporation* and *Kingsport Silk Mills* cases, *supra,* and the mandate of T.C.A., § 50–918, that the Worker's Compensation Law be given an equitable construction by the courts to the end that the objects and purposes of this law may be realized and attained.

In the *Plumlee* case, *supra,* the court reaffirmed and followed its decision in *Russell,* holding that the employee's compensation "is to be fixed by the loss of earning capacity resulting from injury to the single member."

In *Johnson v. Anderson, supra,* the employee suffered injuries only to one leg but was awarded permanent, *total* disability compensation. The Court held that "since the loss of the use of the right leg resulted in permanent total disability to follow the only gainful occupation for which the petitioner was trained or suited, this disability alone, justified the award." 217 S.W.2d at 940.

In the instant case the defendant argues that the 1963 amendment should be construed to prevent an award of compensation for permanent total disability in cases in which the total disability results from an injury to a "schedule member." The *Shores* opinion is cited to support this argument. I disagree. The reliance upon *Shores* is misplaced.

*Shores* was not a permanent, total disability case. In *Shores* the employee had sustained an injury to his foot and the trial court awarded compensation for permanent *partial* disability of 65% of his body as a whole, rather than to his foot or leg. In that case the defendant argued that T.C.A., § 50–1007(c), as amended in 1963, limited the compensation to that prescribed therein for an injury to the foot or leg, i. e., schedule members. Upon appeal this Court agreed with the defendant's argument and limited the award accordingly.

The *Shores* opinion contains considerable *obiter dictum,* but the issue actually decided was that, since the enactment of the "1963 amendment" to subsection (c), if the employee's injury is limited to one of the "schedule members" listed in subsection (c) and if that injury results in a permanent *partial* disability, as distinguished from permanent total disability, his compensation must be limited to that provided in subsection (c) for such schedule member; such permanent partial disability cannot be apportioned to the body as a whole and compensation awarded as provided in the last paragraph of subsection (c) for "[a]ll other cases of permanent partial disability *not above enumerated . . .,"* i. e., permanent *partial* disability resulting from injuries to non-schedule members of the body. (Emphasis added.) That is all that was decided; indeed, the issue posed by the Court for decision was stated as follows:

> "The prime question presented by this suit is whether or not the employee's disability should be assessed to the foot or to the body as a whole in view of an amendment passed by the legislature in 1963 to Section 50–1007(c), T.C.A." 395 S.W.2d at 389.

Even that limited holding of *Shores* appears to have been incorrect in the light of the legislative history of the enactment of the 1963 amendment. That amendment[1] was the subject of bills in both the House and Senate and to reach a consensus on the final wording and purpose of the amendment, both bills were submitted to the joint House-Senate subcommittee. This joint subcommittee issued a statement of intent respecting the 1963 amendment which was approved and entered in the *1963 House Journal* on the date of passage of the amendment. That statement of intent demonstrates the legislative purpose of the amendment in explicit terms.

"[I]t is expressly intended that the present law be changed so as to merely preclude a double recovery resulting from both an award for injury to a specific scheduled member and for disability to. the body as a whole where both are suffered due to the same loss of members of [sic] the same injury to a member. It is expressly not intended by said section to preclude recovery for disability to the body as a whole instead of a scheduled benefit where injury or loss of a specific scheduled member results in disability to the body as a whole. The construction of law as heretofore established, allowing disability to the body as a whole in cases where such disability results from loss or injury to a scheduled specific member is expressly intended to be preserved except that double recovery (scheduled award plus body as a whole award) alone is intended to be eliminated." *House Journal* 90 (Tenn.1963).

It thus appears that the amendment's sole purpose was to prevent double recovery from both schedule and non-schedule injury provisions of the same injury. It is also clear that the amendment's purpose was neither to change prior judicial policy nor to prevent an award of non-schedule partial or permanent total disability compensation when justified. Had this Court been presented with this legislative statement of intent, in all likelihood it would not have held, as it did that when only a schedule member was affected the 1963 amendment limited compensation for permanent partial disability exclusively to that provided in the schedule. However, that issue is not before us in the case at bar and I express no opinion respecting the continued vitality of the *Shores* opinion.

In any event the *Shores* decision is not authority for the argument made by the defendant in the instant case. *Shores* does not hold that an employee who sustains permanent *total* disability by reason of injury solely to a "schedule member" must have his compensation limited to that provided in subsection (c) for permanent *partial* disability, instead of that provided by subsection (d) for permanent total disability. It is my view that our opinion in *Genesco v. Creamer*, Tenn., 584 S.W.2d 191 (1979) approving *Shores* was erroneous, in view of the above statement of legislative intent. It is our duty to give effect to that intent, despite our earlier error.

I would hold, based upon a fair and reasonable construction of the language employed in the statute itself and in light of the statement of legislative intent above quoted, that the last sentence of subsections (c) of T.C.A., § 50–1007, the so called "1963 amendment," does not apply to cases of permanent *total* disability resulting from an injury to a "schedule member." In all cases of permanent *total* disability as defined in subsection (e) of T.C.A., § 50–1007, the employee should receive the compensation for permanent *total* disability as set out in subsection (d), without regard to whether such disability results from an injury to a "schedule member" or to some other part of his body.[2]

---

1. *See* 46 Tenn.L.Rev. 884 (1979).

2. This Court has consistently held that limitations imposed in one subsection are not applicable to other subsections of the disability provisions. For example, in *Wilkinson v. Johnson City Shale Brick Corp.*, 156 Tenn. 373, 381–82,

2 S.W.2d 89 (1928) (petition to rehear) the Court stated:

"In other words, one deals with permanent partial and the other with permanent total disability, and they are in no way related or connected." *Ibid.* at 382, 2 S.W.2d at 89.

I find adequate evidence in the record to support the finding of the trial court that the plaintiff was permanently and totally disabled and, therefore, that under the law as I have stated it in this opinion she was entitled to an award for permanent total disability as provided by T.C.A., § 50–1007(d), (e).

I am authorized to state that DROWOTA, J., joins with me in this concurring opinion.

See also, *Liberty Mutual Insurance Co. v. Maxwell*, 164 Tenn. 1, 46 S.W.2d 67 (1932); *Clayton Paving Co. v. Appleton*, 163 Tenn. 27, 39 S.W.2d 1037 (1931).