Sara C. SMITH, Plaintiff/Appellee,

v.

EMPIRE PENCIL COMPANY and
Aetna Casualty & Surety Co.,
Defendants/Appellants.

Supreme Court of Tennessee,
at Nashville.

Dec. 4, 1989.

Lee Russell, Russell & Russell, Shelbyville, for defendants/appellants.

John H. Norton, III, Norton & Seckler, Shelbyville, for plaintiff/appellee.

OPINION

O'BRIEN, Justice.

The defendants have appealed the judgment of the trial court in this workers' compensation case awarding temporary total disability, permanent partial disability,

and certain medical expenses to the plaintiff.

In the issues presented for review it is asserted the trial court erred in finding that plaintiff had sustained a compensable injury; had erred in making an award of temporary total disability benefits; and had committed error in making an award of permanent partial disability to the body as a whole rather than to a scheduled member.

The standard of review for this Court is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings below, unless the preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e), as amended.

On the issue of causation, the plaintiff testified that on 26 April 1986 she had been employed by Empire Pencil Company for approximately 18 years. On that day, while lifting boxes of packaged pencils from a conveyor belt near the floor to a table where she was processing them for shipment, she felt a sharp pain in her right shoulder. She rested for a few moments and then attempted to continue her work. She was unable to lift any more during that day. She reported to her foreman that she had hurt her shoulder lifting a box. She did not make her time or fill her production quota for the day. The incident occurred on a Saturday when the first-aid room was closed. She utilized a heating pad over the weekend and on Monday morning when she went to work she reported to the company nurse that she had picked up the box and injured her shoulder.

Defendant continued to report to work and worked the entire week beginning April 28. She worked nearly 40 hours on the week beginning 6 May 1986 and all of the following week. She testified that during all this time her shoulder was hurting her. She tried to work but had to have help from the people working on the machine with her. She could not carry her end of the load. On 6 May 1986 she made an appointment with Dr. John Johnson a rheumatologist who had been treating her

for other conditions. She saw him several times during the ensuing month. On 22 May, while preparing her lunch to go to work, she closed a kitchen drawer and felt her shoulder pop. She saw Dr. Johnson that day. Ultimately on 6 June, 1986 he referred her to Dr. Eugene M. Regen, an orthopedic specialist. He diagnosed her problem as a torn rotator cuff and hospitalized her to repair the injury surgically.

Medical proof was by deposition of Dr. Regen and that of Dr. Richard Fishbein, who saw Mrs. Smith in May of 1988 for the purpose of evaluation. The doctors were in complete accord about the nature of Mrs. Smith's injury. They differed sharply and radically on the issue of causation and compensability. Dr. Regen testified that based upon his observation of plaintiff's shoulder during surgery the rotator cuff tear did not occur as a result of the 26 April 1986 work incident and it had occurred six to ten months prior to that occurrence. According to Dr. Regen the work incident only momentarily strained or trapped tissue that was already torn. He testified that the episode which caused Mrs. Smith to be symptomatic and led to his treatment and surgery was the occasion when she shut the drawer at home. He rated her anatomical impairment at thirty percent (30%) to the right upper extremity, as a result of her shoulder condition, but would not relate any of his rating to the incident at work. He also indicated that from an industrial standpoint, plaintiff was substantially, functionally disabled. He recommended that she should not return to work and risk disrupting her shoulder again.

Dr. Fishbein testified that he had been asked to perform an independent medical evaluation by the plaintiff. Prior to performing that task he reviewed her deposition and the deposition of Dr. Regen. He took a detailed history from Mrs. Smith regarding the incident on 26 April 1986 and reviewed her medical records and reports from Dr. Regen. He expressed the opinion that plaintiff's work episode on 26 April 1986 had caused the rotator cuff tear. He

was equally certain that she could not have worked at her employment prior to 26 April 1986 if the "complete tear" found in surgery had existed prior to the box-lifting incident on that date. He also expressed the opinion that because plaintiff was asymptomatic prior to 26 April 1986, having had no problems with the shoulder or in performing her work he had no doubt that there was a direct causal relationship between the box-lifting episode and the complete tear of the rotator cuff. He assigned a permanent anatomical impairment rating of thirty-five percent (35%) to the right upper extremity and indicated that plaintiff was severely functionally limited because of the residual effects of her injury.

There was also lay testimony other than that of the plaintiff in reference to the nature and extent of her disability.

■■■ This Court has consistently held that causation and permanency of a work-related injury must be shown in most cases by expert medical evidence. *Tindall v. Waring Park Association*, 725 S.W.2d 935, 937 (Tenn.1987). However, a plaintiff is competent to testify with respect to his own physical condition and disability. *Floyd v. Tennessee Dickel Distilling Company*, 463 S.W.2d 684, 225 Tenn. 65 (1971). If, upon undisputed proof, it is conjectural whether disability resulted from a cause operating within petitioner's employment, or a cause operating without employment, there can be no award. *Tindall v. Waring Park Association*, supra. If, however, equivocal medical evidence combined with other evidence supports a finding of causation, such an inference may nevertheless be drawn by the trial court under the case law. *Tindall*, supra, (citations omitted).

We concur with the trial court's finding that the notice to the employer was adequate under the circumstances of this case and that Mrs. Smith sustained a compensable accident during the course and scope of her employment with Empire Pencil Company on 26 April, 1986.

■■■ The trial court was also correct in the award of temporary total disability ben-

efits. Of course the burden of establishing entitlement to compensation is on the claimant. See *Wade v. Aetna Casualty & Surety Co.*, 735 S.W.2d 215, 220 (Tenn. 1987). The trial judge held that plaintiff's temporary total disability began 7 June 1986, the day after her last day of employment, and ended on 9 December 1986. Plaintiff testified she was prepared to go back to work on that date until she discussed the matter with Dr. Regen. After examining her he advised her to go ahead and make arrangements to retire to avoid any risk of reinjury to her shoulder. She reported to her employer on that day that she could not return to work. While Dr. Regen indicated his intent to keep her under observation for follow-up we are of the opinion the foregoing evidence sufficiently established the date of maximum recovery even though he may not have finally released her from his care.

■■■ We are left with the issue of whether the trial court erred in making an award of permanent partial disability benefits to the body as a whole rather than to a scheduled member.

T.C.A. § 50–6–207 provides the schedule of compensation to be allowed employees under the provisions of the Workers' Compensation Law. Subdivision (3) of the title provides for compensation in payment for permanent partial disability as the result of the loss or loss of use of various members of the body. For the loss of an arm, including the loss of use, the compensation authorized by the statute is 66⅔% of the average weekly wages during 200 weeks. After fixing the schedule of payment for permanent partial disability due to injury to the various members of the body, subdivision (3)(F) provides "all other cases of permanent partial disability not above enumerated shall be apportioned to the body as a whole, which shall have a value of four hundred (400) weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury...."

Each of the doctors testifying in this case, Dr. Richard E. Fishbien, for the plaintiff, and Dr. Eugene M. Regen, Jr., for the defendants, agreed that Mrs. Smith suffered a partial permanent impairment to the *right upper extremity.* Dr. Fishbien's assessment was thirty-five percent (35%) while Dr. Regen stated her impairment to be thirty percent (30%). The trial court found that the plaintiff retained forty percent (40%) permanent partial vocational disability to the body as a whole. The defendant insists the disability rating should have been assessed to the arm as a scheduled member. The plaintiff, of course, insists that neither "the upper extremity" nor "the shoulder" have been enumerated as a scheduled member and therefore the trial court was eminently correct in awarding benefits to the body as a whole. Each of the parties argue on the facts, offering no legal authorities except the statute and the case of *Continental Insurance Company v. Pruitt,* 541 S.W.2d 594 (Tenn. 1976), cited by the trial court in its ruling.

There are a number of opinions of this Court which lead us to the proper rationale for the decision in this case. In *Chapman v. Clement Brothers, Inc.,* 222 Tenn. 223, 435 S.W.2d 117 (1968), the plaintiff was involved in an accident after which his injuries were diagnosed as a fracture of the greater tuberosity of the right humerus and possibly a tear of the rotator cuff of the right shoulder. The doctor who testified described the rotator cuff as the muscles which extend to the upper arm from the shoulder blade. He further testified as follows:

"... [T]he American Medical Association Guide sets forth that 'the upper extremity is a unit of the whole man. It may be divided into four sections; the hand, the wrist, the elbow and the shoulder.'"

The *Chapman* court went on to say "in other words, this was an injury to the shoulder which is a portion of the right upper extremity. This doctor then says that this injury is restricted to the right upper extremity and use of all parts attached to the shoulder, arm, forearm and hand would be impaired quite markedly due to the restriction of motion that he has in his shoulder due to pain, which the doctor is sure he has. The doctor fixes the disability to the *entire right upper extremity.*" (Emphasis supplied).

The trial court in *Chapman* entered an award based on injury to the body as a whole. This Court, after considering the foregoing testimony, and the testimony of another physician in the case, held that where medical testimony established that only the right arm of the claimant had been injured, disabilities must be allowed for the scheduled member and compensation should not have been allowed on the basis that there had been an injury to the body as a whole. We have cited the case to provide the American Medical Association Guide definition of upper extremity and leave the decision of the Court to be settled on the facts of that case.

The *Continental Insurance Company* case was published in 1976. In that case the trial court awarded permanent partial disability to the body as a whole for an injury to the *upper left extremity.* (Emphasis ours). The plaintiff had a partial removal of the humeral head and an almost total removal of the acromion process which is part of the bony structure of the shoulder. She had a rotator cuff tear, which was described as being a disruption of the rotator cuff, which is "the end product of three muscles in the shoulder [which all come together] and this is inserted into the head of the humerus." (The bone extending from the shoulder to the elbow). On redirect examination the testifying doctor defined "left upper extremity" as follows, "I am talking about her hand, her elbow, her wrist, her forearm, her elbow and *shoulder.* I am talking about the entire extremity." (Emphasis in original). This Court affirmed the judgment of the trial court.

In *Blackburn v. Allied Chemical Corporation,* 616 S.W.2d 600 (Tenn.1981) the trial court awarded permanent total disability

to an employee for a compensable injury which resulted in the fracture of the head and neck of her left femur. This Court found that the appellee's initial fracture and the subsequent surgery resulted in injuries extending beyond a scheduled member, and found there was material evidence to support the award by the trial court of disability to the body as a whole. As a side issue the majority declined to overrule or modify prior decisions in *Shores v. Shores*, 217 Tenn. 96, 395 S.W.2d 388 (1965); *Genesco, Inc. v. Creamer*, 584 S.W.2d 191 (Tenn.1979), and *Chapman*, supra, holding that where an injury is in fact confined to a scheduled member, only scheduled benefits may be awarded.

The most recent pronouncement of the court applicable to this issue is found in *Wade v. Aetna Casualty and Surety Company*, supra:

"In T.C.A. § 50–7–207(3), which provides for awards of permanent partial disability, the legislature has specifically designated rates of recovery for permanent impairment of certain parts of the body, i.e. scheduled members. Permanent partial disability to areas not specifically enumerated as scheduled members are to be assessed as a percentage of the 'body as a whole.' T.C.A. § 50–6–207(3)(F). This Court has repeatedly held that an award of permanent partial disability for an injury to a scheduled member is exclusively controlled by the rate established by the legislature for that member and is not includable in an award to 'the body as a whole.' *Genesco v. Creamer*, 584 S.W.2d 191 (Tenn.1979); *Washington County Bd. of Educ. v. Hartley*, 517 S.W.2d 749 (Tenn.1974); *Chapman v. Clement Bros., Inc.*, 222 Tenn. 223, 435 S.W.2d 117 (1968); *Shores v. Shores*, 217 Tenn. 96, 395 S.W.2d 388 (1965)."

This record is replete with references to injury to plaintiff's shoulder in depositions by both doctors. The only definition of "upper extremity" we have found in the case law is that noted in *Chapman*, supra. It includes the *hand*, the *wrist*, the *elbow*

and the *shoulder*. (Emphasis supplied.) It is an injury not otherwise specifically provided for in T.C.A. § 50–6–207(3). It does therefore fall under the provisions of T.C.A. § 50–6–207(3)(F) to be apportioned to the body as a whole. In *Reagan v. Tennessee Municipal League*, 751 S.W.2d 842, 844 (Tenn.1988), the Court noted the rule "that the trial judge is not confined to the medical rating in making the ultimate award." There is abundant evidence in this record to justify the trial court's award of forty percent (40%) to the body as a whole based upon an unscheduled injury.

The judgment of the trial court is affirmed in its entirety. Execution on the judgment has been stayed pending disposition of this appeal and the case is remanded to the trial court for all other necessary and further proceedings. The costs of this appeal are assessed against the defendants.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ.