FILED

APR 1 4 2022

Clerk of the Appellate Courts
Rec'd By ⎵�⊃

# IN THE SUPREME COURT OF TENNESSEE
## SPECIAL WORKERS' COMPENSATION APPEALS PANEL
Assigned on Briefs December 17, 2021

## DERINDA CARR v. WINDHAM PROFESSIONALS, INC. ET AL.

**Appeal from the Circuit Court for Sumner County**
**No. 83CC1-2014-CV-336  Joe H. Thompson, Judge**

**No. M2021-00451-SC-R3-WC- Mailed February 9, 2022**

Appellant Derinda Carr challenges the trial court's finding her neck injury did not arise primarily "out of and in the course and scope of" her employment. The appeal has been referred to the Special Workers' Compensation Appeals Panel for a hearing and a report of findings of fact and conclusions of law pursuant to Tennessee Supreme Court Rule 51. We agree with the trial court and affirm the judgment.

**Tenn. Code Ann. § 50-6-225(e) (2014)**
**(applicable to injuries occurring prior to July 1, 2014) Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

DON R. ASH, SR. J., delivered the opinion of the court, in which HOLLY KIRBY, J., and ROBERT E. LEE DAVIES, SR. J., joined.

B. Keith Williams and James R. Stocks, Lebanon, Tennessee, for the appellant, Derinda Carr

Lindsay Blair Bennington Cannon, Atlanta, Georgia, for the appellees, Windham Professionals, Inc., and Hartford Underwriters Insurance Co.

## OPINION

### Factual and Procedural Background

Appellant Derinda Carr began working for Appellee Windham Professionals, Inc. ("Windham") in 2007 as a collection agent. Her primary job duties were to locate individuals in default on their student loan payments and attempt to collect on those debts. She was required to make 150 outbound calls and work on eighty accounts per day.

Ms. Carr's work station included a telephone used to make outbound calls and a computer where she would both review individuals' credit reports and input information about each account. She initially had a headset which allowed her to talk on the phone hands-free. After a time, however, the headset stopped working, and Ms. Carr requested a second headset which also stopped working. After the second headset stopped working, Ms. Carr chose to instead make calls using her phone's handset.[1] Since she had to type notes into the computer while making phone calls, Ms. Carr had to hold the handset on her shoulder and tilt her neck to the side to keep it in place. While Ms. Carr occasionally rested the handset on her left shoulder, she primarily rested it on her right side and had her neck tilted to the right. She made phone calls this way from 2007 until approximately October 2013.

In August 2012, Ms. Carr took a leave of absence from work due to depression, stomach problems, and weight loss. During this leave, Ms. Carr awoke one morning with a burning sensation down her right leg and lower back pain so severe she could not stand. Ms. Carr went to Dr. Helion Cruz, who performed an MRI which revealed a severe herniated disc in her lower back. Dr. Cruz then referred Ms. Carr to Dr. John Spooner. Dr. Spooner recommended surgery, and Ms. Carr subsequently obtained a second opinion from Dr. Martin Wagner. He also recommended surgery.

Ms. Carr underwent a discectomy in early 2013 to remove the herniated disc. After a period of rest, Dr. Spooner cleared Ms. Carr to return to work in May 2013. Two or three months into her return, Ms. Carr started experiencing pain again, this time in the "middle part" of her back. She again saw Dr. Spooner, who ordered another series of MRIs which showed "severe central canal stenosis."[2]

During a follow-up meeting with Dr. Spooner to discuss the MRI results, Ms. Carr complained of a "long history of neck pain."[3] After reviewing her MRI results with Dr.

---

[1] When asked during the hearing before the trial court why she did not request a third headset, Ms. Carr replied that she "just figured [she] went through two and they wasn't [sic] working so [she] just started using her handset." She also testified she did not try placing people she called on speakerphone because allowing other collectors to hear individuals' personal information would have violated the federal Fair Debt Collection Practices Act. David Fisher, Windham's Vice President of Operations and Analytics, testified at the hearing that headsets were readily available to Windham employees. If an employee needed a replacement headset, all they had to do was alert a manager. On cross-examination, however, he admitted he had only worked at Windham since 2011 and had no knowledge of whether these procedures were in place when Ms. Carr first began working at Windham in 2007.

[2] Canal stenosis refers to "a congenitally narrowed spinal canal." *Wilcutt v. CAM Elec. Sys.*, No. W2013-00772-WC-R3-WC, 2014 WL 3735492, at *3 (Tenn. Workers' Comp. Panel July 28, 2014).

[3] While Dr. Spooner's notes reflect Ms. Carr complaining of a "long history" of neck pain, Ms.

Spooner and obtaining another second opinion from Dr. Wagner, she reported her neck injury to a supervisor at Windham and filed for workers' compensation.[4] Windham referred Ms. Carr to an urgent care facility, where she met with another doctor who did not review any of Ms. Carr's MRIs but opined her injuries were not work-related.[5] Ms. Carr continued to treat with Spooner on her own, and she underwent a cervical fusion in December 2013. This put her out of work again for several months.

Ms. Carr returned to work in March 2014 on a part-time basis, working only four hours per day. She testified experiencing head and neck pain every day, and she would regularly experience a "choking" feeling in her throat. Eventually, the head and neck pain and choking feeling became too much, and Ms. Carr worked her last day at Windham on April 14, 2014.

Dr. Spooner testified via deposition he first treated Ms. Carr in 2013 for her lower back. In September of the same year, he ordered more MRIs on Ms. Carr; those MRIs revealed a "large cervical disc herniation and early signs of myelopathy." Dr. Spooner also noted Ms. Carr had undergone two surgeries, but she retained some permanent damage to her spinal cord. He testified she would likely always have some type of pain and physical limitations.

Dr. Spooner said at some point Ms. Carr asked him if the "repetitive motion of her neck and having her head titled with a phone" was the cause of her injuries. He opined it was "possible." He noted he had reviewed Dr. Wagner's records—which concluded Ms. Carr's injuries were in fact work-related—prior to the deposition. When pressed on cross-examination, Dr. Spooner admitted he had not been provided with a copy of Ms. Carr's job duties or job description to aid in giving his opinion. Instead, he offered:

> the only thing that I know is what she told me, which was that she repetitively was required to hold her head and the phone tilted. And, it's possible that this repetitive motion could lead to the degeneration that caused her – [u]ltimately caused the degenerative disease in her neck.

Dr. Martin Wagner testified via deposition he first began seeing Ms. Carr in January

---

Carr testified in her deposition that she first began having issues after she returned to work in May 2013. Dr. Spooner's notes first mention neck pain during an appointment with Ms. Carr on September 17, 2013.

[4] Ms. Carr also later filed a separate workers' compensation claim against Windham for carpal tunnel syndrome that was denied.

[5] Ms. Carr also selected another doctor, Dr. Baggett, from a panel presented by Windham, but she never saw him.

2013 for various conditions including arm and hand numbness. He also treated her for carpal tunnel syndrome. Dr. Wagner stated, in his medical opinion, that Ms. Carr's neck issues arose out of her employment with Windham. Although Ms. Carr had evidence of age and behavior-related degenerative changes, the way she held the phone headset against her shoulder was the primary cause of the injuries. Dr. Wagner stated this was because "occupational hazards, such as persons who are engaged in abnormal posture for a prolonged period of time[,] puts them more at risk for degenerative spine disease."

Dr. Wagner's notes reflect Ms. Carr first came to him with a "work-related description" of her injuries on January 28, 2014. The same day, he provided a letter describing Ms. Carr's job duties and opining that her stenosis and myelopathy "is a work-related injury and should be files [sic] with workers' compensation." The letter states Dr. Wagner obtained his knowledge of Ms. Carr's work conditions from Windham's official job description document.

On cross-examination, Dr. Wagner conceded he was not a surgeon and had never performed a cervical surgery. He also stated he was licensed to treat the types of issues Ms. Carr suffered from, and other doctors often referred patients like Ms. Carr to him. He admitted he did not know that at the time Ms. Carr first saw him in January 2013, she was not presently working. Dr. Wagner agreed this time off work would have helped curb the stenosis, but he also asserted this would only have delayed the changes rather than prevented them. Dr. Wagner agreed once a person had developed stenosis in one part of their spine, they were more likely to develop it in other parts. However, he ultimately stuck by his conclusion: "doing [Ms. Carr's job] every single day with the head turned toward one side or the other side led to an acceleration of degenerative changes."

Dr. David West testified via deposition he frequently performed individual medical examinations for workers' compensation cases and worked with both plaintiffs and defendants. He noted he was sent Ms. Carr's records specifically to give an opinion on whether her injuries arose "primarily out of and in the course and scope of her employment." Dr. West noted he considered all records from Drs. Spooner and Wagner as well as further medical records from the Tennessee Department of Labor, CareSpot, Howell Allen, and Tennessee Orthopaedic Alliance.

Considering Ms. Carr's previous injuries, it was Dr. West's opinion her work conditions did not cause her cervical stenosis. Dr. West opined Ms. Carr holding her headset on her shoulder would cause a cervical sprain, not stenosis. He also suggested, as Dr. Wagner had noted, Ms. Carr's previous spinal issues would make it more likely a future issue would develop of its own accord. Dr. West stated even if Ms. Carr's work conditions could injure her neck, it would primarily injure the right side since she mostly held the phone on her right shoulder. Despite this, Ms. Carr's records showed significant stenosis

on both sides. Dr. West found Ms. Carr's carpal tunnel syndrome was likely the real cause of her neck issues. He admitted on cross-examination he had never met or treated Ms. Carr.

The court entered its memorandum opinion and order on April 5, 2021. It held Ms. Carr had failed to meet her burden of showing her injury arose primarily out of and in the course and scope of her employment with Windham. The court afforded Dr. Spooner's testimony the most weight since he had treated Ms. Carr the longest and performed both of her surgeries. The court found Dr. Spooner's testimony finding Ms. Carr's injury "possibly" came about from her work at Windham was not enough to support a finding of causation. The court discounted Dr. Wagner's opinion because he was not aware of Ms. Carr's leave of absence beginning in August 2012, and, unlike Drs. Spooner and West, he was not a surgeon. The court credited Dr. West's testimony as "further support[ing] a finding [Ms. Carr's] work activities were not the primary cause of the alleged neck injury."[6] Ms. Carr timely appealed.

## Standard of Review

Because the undisputed date of the alleged injury is September 24, 2013, the previous version of the workers' compensation law governs this case. *See* Tenn. Code Ann. § 50-6-101 (2014 & Supp. 2017) ("All claims having a date of injury prior to July 1, 2014, shall be governed by prior law."). "Review of the trial court's findings of fact shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2) (2014) (applicable to injuries occurring before July 1, 2014). Even with this presumption, however, the reviewing court must still "examine, in depth, a trial court's factual findings and conclusions." *Wilhelm v. Krogers*, 235 S.W.3d 122, 126 (Tenn. 2007) (quoting *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn. 1991)). The trial court's assessment of credibility and weight of the evidence heard in court receives considerable deference. *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2007). When the evidence is documentary, such as a deposition, we are in the same position to evaluate that evidence as the trial court. Thus, we provide no deference with

---

[6] While not raised as an issue on appeal, we note that the trial court's memorandum opinion and order is taken almost verbatim from Windham's proposed findings of fact and conclusions of law. The court also requested proposed findings of fact and conclusions of law without making any kind of oral or written ruling. As such, we "take this opportunity to remind the trial courts of requirements in this area set forth by our Supreme Court in *Smith v. UHS Lakeside, Inc.*, 439 S.W.3d 303 (Tenn. 2014)." *Loveless v. City of New Johnsonville*, No. M2018-00523-SC-R3-WC, 2019 WL 645157, at *2 n.1 (Tenn. Workers' Comp. Panel Feb. 15, 2019). "First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the trial court's own deliberations and decision." *Smith*, 439 S.W.3d at 316.

respect to the analysis of documentary evidence. *Id.* The same applies to conclusions of law. *Id.*

## Analysis

The sole issue Ms. Carr raises on appeal is whether the trial court erred in holding she failed to meet her burden of proving causation. The previous version of Tennessee's Workers' Compensation Act requires employers to pay compensation for repetitive motion injuries which arise "primarily out of and in the course and scope of employment." Tenn. Code Ann. §§ 50-6-102(12)(C)(ii), -103(a) (2014) (applicable to injuries occurring prior to July 1, 2014); *see also Foreman v. Automatic Sys., Inc.*, 272 S.W.3d 560, 571 (Tenn. 2008) ("[T]he 'arising out of employment' requirement refers to causation." (citing *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997))). The employee bears the burden of proving causation by a preponderance of the evidence. *See Foreman*, 272 S.W.3d at 572.

"Except in the most obvious cases, causation must be established by expert medical evidence." *Trosper v. Armstrong Wood Prods., Inc.*, 273 S.W.3d 598, 604 (Tenn. 2008) (citing *Glisson v. Mohon Int'l Inc./Campbell Ray*, 185 S.W.3d 348, 354 (Tenn. 2006)). Since the employee must prove causation by a preponderance of the evidence, any medical evidence offered "must not be speculative or so uncertain regarding the cause of the injury that attributing it to the [employee's] employment would be an arbitrary determination or a mere possibility." *Foreman*, 272 S.W.3d at 572 (alteration in original) (quoting *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987)). The court must consider the expert medical testimony "in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) (citing *Smith v. Empire Pencil Co.*, 781 S.W.2d 833, 835 (Tenn. 1989)).

On appeal, Ms. Carr argues the trial court improperly weighed the competing medical testimony and failed to consider her lay testimony in reaching its conclusion. We disagree.

With respect to Ms. Carr's lay testimony, and contrary to her assertion, our review of the record shows the trial court did consider it in making its determination. Most of its findings of fact come directly from Ms. Carr's testimony during the hearing. In particular, the trial court focused on Ms. Carr's choice to not request another headset and her failure to complain of neck pain until after her second round of MRIs. The trial court is entitled to "considerable deference" as to these findings, *see Tryon*, 254 S.W.3d at 327, and the record does not preponderate against them. Just because the trial court drew largely negative inferences from Ms. Carr's testimony does not mean it failed to adequately

- 6 -

consider the testimony.[7]

With respect to the medical testimony, when evaluating competing theories, we consider several factors, including "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

Dr. Spooner's opinion received little weight from the trial court, as it concluded the opinion only "establishes that the work conditions are speculatively a mere possible cause for [Ms. Carr's] condition." While Dr. Spooner treated Ms. Carr the longest of the three doctors and performed both her surgeries, his deposition does not provide any real insight into his assessment that a work-related connection to Ms. Carr's neck injury could be inferable. In fact, he testified "the only thing that [he] kn[e]w is what [Ms. Carr] told [him], which was that she repetitively was required to hold her head and the phone tilted." Moreover, this information combined with his review of Dr. Wagner's records only got Dr. Spooner to suggest Ms. Carr's employment had a "possible" effect on her neck.

The trial court also discounted Dr. Wagner's opinion because he was primarily treating Ms. Carr for carpal tunnel syndrome and because he "was not aware [Ms. Carr] had been out of work from August 2012 through May 2013." Therefore, his opinion, while less equivocal than Dr. Spooner's, was "based on misinformation." Dr. Wagner also testified he was not a surgeon. He found as a general matter "occupational hazards, such as persons who are engaged in abnormal posture for a prolonged period of time[,] puts them more at risk for degenerative spine disease" and any time off work would have only delayed Ms. Carr's injuries, not prevented them.

Finally, the trial court credited Dr. West's testimony largely because it was "consistent with Dr. Wagner's in regards to [Ms. Carr] suffering from carpal tunnel syndrome, but such condition is not the injury alleged in this case." Dr. West has the most

---

[7] Even though we conclude the trial court did consider Ms. Carr's lay testimony in reaching its conclusion, its memorandum opinion and order appears to at least imply that it did not need to do so. Specifically, the court cited *Memphis Light Gas & Water v. Evans*, No. W2015-01541-SC-WCM-WC, 2016 WL 4414646 (Tenn. Workers' Comp. Panel Aug. 19, 2016), for the proposition that a physician's opinion that an activity "most likely" caused an injury does not meet the "primarily" bar of Tennessee Code Annotated § 50-6-102. While that is true as a standalone rule, the Panel in *Evans* did not discuss lay testimony. Instead, the trial court there considered competing testimonies and from two physicians and simply found one more persuasive than the other. *See id.* at *7. Under the prior version of the workers' compensation law, which governs this case, medical testimony "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred." *Thomas*, 812 S.W.2d at 283; *see also, e.g.*, *Alexander v. NGMCO, LLC*, No. M2016-01480-SC-R3-WC, 2017 WL 4861956, at *6 (Tenn. Workers' Comp. Panel Oct. 26, 2017) (old law case using both expert and lay testimony to establish causation).

tenuous relationship with Ms. Carr, as he has never met or treated her. The record also reflects, however, that Dr. West arguably reviewed the most complete set of medical information in arriving at his conclusion and was the most detailed in his analysis. He thoroughly explained Ms. Carr's work setup would cause a cervical sprain instead of degeneration and, while Ms. Carr primarily tilted her head to one side, her records showed degeneration on both sides of her neck. Dr. West explained these symptoms were most likely a result of Ms. Carr's carpal tunnel syndrome.

The issue of causation is admittedly very close in this case. After our own review of the record, however, "we find nothing . . . which would cause us to reach a different conclusion" than the trial court. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 679 (Tenn. 2005). The evidence does not preponderate against the trial court's conclusions drawn from Ms. Carr's testimony. We also agree Dr. Spooner's testimony is largely unhelpful since it provides no real basis for his conclusion and only suggests a work-related connection to the injury is "possible." Dr. Wagner's opinion is similarly faulty largely because it not based on Ms. Carr's full work history. *Cf. Jones v. CVS Pharmacy, Inc.*, No. E2013-02451-SC-R3-WC, 2014 WL 6490204, at *4 (Tenn. Workers' Comp. Panel Nov. 20, 2014) (concluding the trial court properly discounted medical testimony where the employee provided incomplete information). Finally, Dr. West's testimony, while more remote, appears the most holistic.

As noted above, the information considered by a medical expert is a proper basis for resolving conflicting testimony. *See Orman*, 803 S.W.2d at 676. Ultimately, the trial court chose to credit Dr. West's theory of causation over those of Drs. Spooner and Wagner because their testimonies were equivocal and based on less complete information. This is not an unreasonable conclusion. Our own review "leads us to the conclusion that the trial court could have reasonably ruled in favor of either party . . . . Therefore, we are unable to find that the evidence preponderates against the trial court's ruling on this issue." *Williams v. United Parcel Serv.*, 328 S.W.3d 497, 504–05 (Tenn. Workers' Comp. Panel 2010).

## Conclusion

Because we agree Ms. Carr has failed to prove causation by a preponderance of the evidence, we affirm the judgment of the trial court. Costs are taxed to the appellant, Derinda Carr, for which execution may issue if necessary.

DON R. ASH, SENIOR JUDGE

FILED

APR 1 4 2022

Clerk of the Appellate Courts
Rec'd By ___ KO

IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

## DERINDA CARR v. WINDHAM PROFESSIONALS, INC. ET AL.

### Circuit Court for Sumner County
### No. 83CC1-2014-CV-336

### No. M2021-00451-SC-WCM-WC

### JUDGMENT ORDER

This case is before the Court upon the motion for review filed by Derinda Carr pursuant to Tennessee Code Annotated section 50-6-225(e)(5)(A)(ii), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Opinion setting forth its findings of fact and conclusions of law.

It appears to the Court that the motion for review is not well taken and is, therefore, denied. The Panel's findings of fact and conclusions of law, which are incorporated by reference, are adopted and affirmed. The decision of the Panel is made the judgment of the Court.

Costs are assessed to Derinda Carr, for which execution may issue if necessary.

It is so ORDERED.

PER CURIAM

HOLLY KIRBY, J., not participating