Steven WILLIAMS

v.

**UNITED PARCEL SERVICE et al.**

Supreme Court of Tennessee,
Special Workers' Compensation
Appeals Panel,
at Nashville.

June 28, 2010 Session.

Sept. 28, 2010.

498

David T. Hooper, Brentwood, Tennessee, for the appellants, United Parcel Service and Liberty Mutual Insurance Company.

William J. Butler, Lafayette, Tennessee, for the appellee, Steven Williams.

**MEMORANDUM OPINION**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which, JON KERRY BLACKWOOD and WALTER C. KURTZ, SR., JJ., joined.

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel. An employee who sustained a compensable injury to his left knee in 2006 filed suit in the Chancery Court for Wilson County seeking to recover benefits for an additional injury to his right knee allegedly caused by over-reliance on his right leg as a result of the earlier injury to his left knee. The employer denied liability and sought to introduce at trial a Medical Impairment Registry ("MIR") report prepared in accordance with Tenn.Code Ann. § 50–6–204(d)(5) (Supp.2009). The trial court sustained the employee's objection to the introduction of

the MIR report. Following a bench trial, the trial court determined that the 2006 injury to the employee's left knee was compensable and awarded the employee 27% permanent partial impairment to each leg. On this appeal, the employer asserts that the trial court erred by excluding the MIR report, by finding that the injury to the employee's right knee was a new, compensable injury, and by basing its award on the impairment rating of the employee's physician. We affirm the judgment.

## I.

Steven Williams, who is currently sixty years of age, began working for United Parcel Service, Inc. ("UPS") when he was twenty-nine years old. He is a high school graduate, and, while he possesses a commercial driver's license, he has no other special training or certifications. For the past twenty-five years, Mr. Williams has worked as a "feeder driver." The job requires him to lift packages up to seventy pounds, to climb steps to reach the cab of his truck, and to move a heavy dolly to hook two trailers to tractor-trailer rigs four times a day. Mr. Williams climbs in and out of the tractor at least twenty times each work day.

Mr. Williams sustained a job-related injury to his right knee in 2003. When Dr. Kurt Spindler performed arthroscopic surgery on Mr. Williams's knee in 2004 to repair a meniscal tear and to smooth down the cartilage, he noted that Mr. Williams already had mild to moderate arthritis underneath his knee cap. Mr. Williams returned to work within a few weeks following the surgery. The surgery did not affect either Mr. Williams's job performance or his leisure activities. Dr. Spindler determined that Mr. Williams had reached

his maximum medical improvement by June 2004.

Dr. Spindler assigned Mr. Williams a 5% impairment to his right leg. Mr. Williams settled his workers' compensation claim with UPS in 2005. The agreement provided him with the right to obtain additional medical care from Dr. Spindler for the 2003 injury.

On April 18, 2006, Mr. Williams injured his left knee while helping a co-worker load a trailer. His left foot became wedged between two packages, and his left knee "popped" when he pivoted to pick up a package. He reported the injury to his supervisor, and he was eventually referred to Dr. Spindler. Mr. Williams continued to work in a light duty status while awaiting a decision and authorization for surgery on his left knee. During this period, Mr. Williams favored his right leg and foot over his newly injured left leg.[1]

Dr. Spindler performed arthroscopic surgery on Mr. Williams's left knee in May 2006. Mr. Williams missed nearly four months of work. However, Dr. Spindler eventually permitted him to return to work without restrictions. Dr. Spindler concluded that Mr. Williams reached his maximum medical improvement in May 2007.

Dr. Spindler continued to treat Mr. Williams until January 2009. During this period, Dr. Spindler checked the progress of the left knee and sometimes drained fluid or injected steroid medications to reduce inflammation. On these visits, Mr. Williams complained about swelling, pain, and buckling of the left knee. At an appointment in May 2007, Dr. Spindler asked Mr. Williams to rate his own knees on a scale of 1% to 100% based on his own subjective assessment of the condition of his knees. Mr. Williams stated that his

---

1. Mr. Williams testified he led with this right foot when he climbed stairs or got into trucks and that he also pushed off with his right leg when hooking up dollies.

right knee felt 85% and that his left knee felt 60%. Dr. Spindler then assigned a 5% anatomical impairment to the lower left extremity. However, during his deposition, he stated that he believed his earlier rating was erroneous and should have been 10% to the lower left extremity.

Mr. Williams and Dr. Spindler have different recollections regarding the condition of his right knee following the 2006 injury to Mr. Williams's left knee. Dr. Spindler did not recall that Mr. Williams complained about the injury to his left knee aggravating the condition of his right knee.[2] Mr. Williams, however, recalled that he complained to Dr. Spindler on several occasions that his right leg was bothering him because of swelling, pain, and increased weakness. He testified that he was favoring his left knee and that, by doing so, he was causing overuse and pain to his right knee. With regard to his condition following the surgery to his left knee, Mr. Williams also testified that he had difficulty pushing dollies at work, that both of his knees would occasionally buckle, and that he was required to ice his right knee to reduce the swelling. Finally, Mr. Williams testified that he became concerned for his safety while driving because of the pain caused by using his left foot to engage and disengage the clutch and that he feared that this might cause either or both of his knees to buckle.

Dr. Robert Landsberg, an orthopedic surgeon, performed an independent medical evaluation at the request of Mr. Williams's counsel. He testified in his deposition that both of Mr. Williams's knees had pseudolaxity, meaning that the ligaments were so loose that they felt torn. He stated that Mr. Williams's right calf and thigh had atrophied more than the left calf and thigh and that there was patello-femoral crepitus (audible clicking and popping) in both knees.

Dr. Landsberg also diagnosed both of Mr. Williams's knees with bilateral post-traumatic arthritis. He believed that Mr. Williams's knee problems were clearly due to the work-related injuries and that the right knee deterioration was advanced and progressed by the 2006 work injury to left knee. Dr. Landsberg opined that the injury to Mr. Williams's left knee caused him to rely on his right knee, thereby worsening and further injuring his right knee. Dr. Landsberg assigned an 18% anatomical impairment to each leg.

Prior to Dr. Spindler's August 24, 2009 deposition, UPS pursued an additional opinion concerning the extent of Mr. Williams's impairment through the Medical Impairment Registry ("MIR"). Dr. James Talmage examined Mr. Williams on September 8, 2009 and filed a report on September 9, 2009 concluding that Mr. Williams had a 12% anatomical impairment rating to the left leg. The director of the Department of Labor and Workforce Development's MIR program approved the report and mailed it to the parties on September 16, 2009. Counsel for UPS filed the report with the clerk and master on September 21, 2009, the day before the trial. The trial court sustained Mr. Williams's objection to the introduction of the report because the report was inadmissible hearsay and because the "unfairness and timeliness of the report was bothersome."

The trial court accredited Dr. Landsberg's testimony as to causation and found that Mr. Williams was credible and truthful. It found that Mr. Williams had compensable injuries to both knees due to the 2006 work-related accident and that the

2. Dr. Spindler testified: "[W]hether he mentioned it in passing or not, and I can't tell you, but it wasn't a point that I wrote it down that it was a big problem."

right knee injury developed as a result of overuse caused by the left knee injury. Because Mr. Williams had retired voluntarily prior to the trial, the parties agreed that the award of benefits was subject to the one and one-half times impairment cap contained in Tenn.Code Ann. § 50–6–241(d)(1)(A) (Supp.2009). Accordingly, the trial court adopted Dr. Landsberg's impairment rating of 18% to each leg and awarded a 27% permanent partial disability to each leg.

UPS contends on appeal that the trial court erred by holding that the 2006 injury to the left knee and subsequent over-reliance on the right knee caused a new compensable injury to the right knee. UPS also insists that the trial court erred by excluding the MIR report. In the alternative, UPS contends that the trial court erred by adopting Dr. Landsberg's impairment rating instead of Dr. Spindler's rating.

## II.

■ Courts reviewing an award of workers' compensation benefits must conduct an in-depth examination of the trial court's factual findings and conclusions. *Wilhelm v. Krogers*, 235 S.W.3d 122, 126 (Tenn.2007). When conducting this examination, Tenn.Code Ann. § 50–6–225(e)(2) (2008) requires the reviewing court to "[r]eview ... the trial court's findings of fact ... de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." The reviewing court must also give considerable deference to the trial court's findings regarding the credibility of

the live witnesses and to the trial court's assessment of the weight that should be given to their testimony. *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn.2008); *Whirlpool Corp. v. Nakhoneinh*, 69 S.W.3d 164, 167 (Tenn.2002). However, the reviewing courts need not give similar deference to a trial court's findings based upon documentary evidence such as depositions, *Orrick v. Bestway Trucking, Inc.*, 184 S.W.3d 211, 216 (Tenn.2006); *Bohanan v. City of Knoxville*, 136 S.W.3d 621, 624 (Tenn.2004), or to a trial court's conclusions of law, *Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826 (Tenn.2003).

## III.

We turn first to the issue regarding the admissibility of Dr. Talmage's report. UPS insists that the trial court erred by excluding the report and that, had the report been admitted into evidence, it would have created a rebuttable presumption[3] that Mr. Williams had a 12% impairment to his left leg. UPS further argues that Mr. Williams would have been entitled to 18% permanent partial disability, rather than 27%. Mr. Williams asserts that the trial court properly excluded Dr. Talmage's report.

■ Decisions by trial courts regarding the admission or exclusion of evidence are discretionary. Accordingly, we must determine whether the exclusion of Dr. Talmage's report certified by the Department of Labor and Workforce Development was an abuse of discretion. *See State v. Lewis*, 235 S.W.3d 136, 141 (Tenn.2007); *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn.2005); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn.2004); *State v. Du-*

---

3. Tenn.Code Ann. § 50–6–204(d)(5) states that "[t]he written opinion as to the permanent impairment rating given by the independent medical examiner pursuant to this subdivision (d)(5) shall be presumed to be the accurate impairment rating; provided, however, that this presumption may be rebutted by clear and convincing evidence to the contrary."

*Bose,* 953 S.W.2d 649, 652 (Tenn.1997). We have determined that it was not based on the facts of this case.

## A.

■ The MIR report procedure in Tenn.Code Ann. § 50–6–204(d)(5) provides a process for obtaining a definitive medical examination by an independent medical examiner regarding the extent of an injured employee's impairment. As required by Tenn.Code Ann. § 50–6–204(d)(6), the Commissioner of the Department of Labor and Workforce Development has promulgated a comprehensive set of rules (1) establishing the qualifications for physicians to be included on the registry, (2) providing procedures for requesting an MIR evaluation, (3) defining the requirements for conducting the evaluations, (4) prescribing the form in which the recommendations must be submitted, (5) establishing the time within which the actions required by the statute must be taken, (6) setting the physicians' fees for the evaluations, and (7) prescribing the procedures for the review, acceptance, and distribution of the MIR reports by the Commissioner.[4]

■ As a general matter, written reports of medical evaluations conducted for the purpose of workers' compensation litigation are hearsay. Thus, in accordance with Tenn. R. Evid. 802, they are not admissible unless as provided by the Tennessee Rules of Evidence or by law. *Arias v. Duro Standard Prods.,* 303 S.W.3d 256, 262 (Tenn.2010). While an MIR report prepared in accordance with Tenn. Code Ann. § 50–6–204(d)(5) does not qualify as an exception to the hearsay rule as a record of a regularly conducted activity under Tenn. R. Evid. 803(6), *see generally*

*Arias v. Duro Standard Prods.,* 303 S.W.3d at 263, we have determined that these reports are admissible as a matter of law in the same way that reports of court-appointed neutral physicians [5] and statements of a physician's opinion on Form C–32 [6] are admissible.

■ The statutes and rules governing MIR reports reflect that the General Assembly's purpose was to provide an efficient method for presenting neutral, objective opinions regarding an employee's impairment to aid trial courts when the parties disagree regarding the extent of the impairment. If the requirements in Tenn.Code Ann. § 50–6–405(d)(5) and the regulations promulgated thereto are met, the report becomes a self-authenticating [7] official document certified by the Department of Labor and Workforce Development. The document itself gives rise to a rebuttable presumption that the impairment rating in the document is "the accurate impairment rating." Tenn.Code Ann. § 50-60-204(d)(5). Accordingly, properly prepared and certified MIR reports should not be excluded as hearsay because their admissibility is otherwise provided by law.

The MIR report containing Dr. Talmage's opinion regarding the extent of Mr. Williams's impairment was properly prepared and certified in accordance with Tenn.Code Ann. § 50–6–405(d)(5) and the applicable regulations. Accordingly, it was admissible by law, and the trial court erred by excluding it on the ground that it was inadmissible hearsay.

## B.

■ UPS also takes issue with the trial court's decision to exclude the MIR report

---

4. Tenn. Comp. R. & Regs. 0800–02–20–.01 through 0800–02–20–.17 (Apr.2006).

5. Tenn.Code Ann. § 50–6–204(d)(9).

6. Tenn.Code Ann. § 50–6–235(c).

7. *See* Tenn. R. Evid. 901(b)(7), (10).

on the ground that it had not been timely filed. It asserts that the statute does not contain explicit filing deadlines and that the manner in which it requested the MIR report was timely and reasonable. We have determined that the trial court did not err by excluding the MIR report on the grounds of timeliness based on the factual circumstances in this case.

By January 2008, the parties were aware of the disparity between the opinions of Drs. Swindler and Landsberg regarding Mr. Williams's impairment rating. Mr. Williams filed suit seeking workers' compensation benefits in August 2008, and, in April 2009, the trial court set the trial date for September 22, 2009. Dr. Landsberg was not deposed until July 15, 2009, and it was only after his deposition was taken—approximately one month before the scheduled trial date—that UPS decided to initiate the process to obtain an MIR report.

It is undisputed that Dr. Talmage did not examine Mr. Williams until two weeks before the scheduled trial date, that the trial date was less than one week away when the Department of Labor and Workforce Development approved Dr. Talmage's report, and that the report was not filed with the trial court until the day before the trial. In the best of circumstances, the parties were aware of the conclusions in Dr. Talmage's report for approximately one week before trial.

A Special Workers' Compensation Appeals Panel recently addressed the means by which a party may rebut the presumption of correctness which attaches to an impairment rating in an MIR report. In *Tuten v. Johnson Controls, Inc.*, No. W2009–01426–SCWC–MWC, 2010 WL 3363609 (Tenn.Workers Comp.Panel Aug. 25, 2010), the panel stated: "A straightforward interpretation of [the clear and convincing evidence] standard favors, or even

requires, the presentation of affirmative evidence that an MIR physician had used an incorrect method or an inappropriate interpretation of the AMA guidelines to overcome the statutory presumption." *Tuten v. Johnson Controls, Inc.*, No. W2009–01426–SCWC–MWC, at \*6, 2010 WL 3363609 (Tenn.Workers Comp.Panel Aug. 25, 2010).

Another Special Workers' Compensation Appeals Panel recently held that an employer's request for a medical examination of an employee, made pursuant to Tenn. Code Ann. § 50–6–204(d)(1), must be reasonable in light of the surrounding circumstances. *Myers v. Vanderbilt Univ.*, No. M2008–02009–WC–R3–WC, 2010 WL 1854141, at \*5 (Tenn.Workers Comp.Panel May 11, 2010); *see also Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d 626, 637 n. 4 (Tenn.2008). A request can be made at such a late point in time that it is unreasonable in light of the court's docket and the potential unfairness to the employee due to inadequate time to address the results of the examination. *See Myers v. Vanderbilt Univ.*, 2010 WL 1854141, at \*7.

Here, the fact that the MIR report was made available to opposing counsel and the trial court just days before trial made it impractical, and perhaps impossible, for Mr. Williams's counsel to develop evidence to rebut the presumption of the MIR report's accuracy by clear and convincing evidence. Thus, consistent with the holdings in *Myers* and *Tuten,* the trial court's decision to exclude the MIR report in this case was appropriate in light of the potential unfairness to Mr. Williams resulting from the lack of a reasonable opportunity to gather affirmative evidence to rebut the results of the examination. Accordingly, the trial court did not abuse its discretion by excluding the MIR report in this case on the grounds that it was not timely.

## IV.

UPS also contends that the trial court erred by finding that Mr. Williams's over-reliance on his right knee following the 2006 surgery on his left knee caused a new, compensable injury. Dr. Landsberg testified that if Mr. Williams had not injured his left knee, he would not have had to put undue stress on the right knee and that it was the undue stress on the right knee that led to its advanced deterioration. Dr. Spindler testified that Mr. Williams never expressed significant concerns about his right knee, but Mr. Williams maintained that he complained of the pain in his right knee on several occasions. In testimony, Mr. Williams described the deterioration of his right knee, as well as the extra pressure he placed on that knee in the few weeks leading up to his left knee surgery.

All reasonable doubts as to the causation of an injury and whether the injury arose out of the employment should be resolved in favor of the employee. *Phillips v. A & H Constr. Co.,* 134 S.W.3d 145, 150 (Tenn.2004); *Reeser v. Yellow Freight Sys., Inc.,* 938 S.W.2d 690, 692 (Tenn.1997); *White v. Werthan Indus.,* 824 S.W.2d 158, 159 (Tenn.1992). We have "consistently held that an award may properly be based upon medical testimony to the effect that a given incident 'could be' the cause of the employee's injury, when there is also lay testimony from which it reasonably may be inferred that the incident was in fact the cause of the injury." *Reeser v. Yellow Freight Sys., Inc.,* 938 S.W.2d at 692; *see also Long v. Tri–Con Indus., Ltd.,* 996 S.W.2d 173, 177 (Tenn. 1999); *Jones v. Hartford Accident & Indem. Co.,* 811 S.W.2d 516, 521 (Tenn.1991) (quoting *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 938 (Tenn.1987)); *P & L Constr. Co. v. Lankford,* 559 S.W.2d 793, 794 (Tenn.1978); *American Ins. Co. v. Ison,* 538 S.W.2d 382, 385 (Tenn.1976).

In addition, a subsequent injury, whether in the form of an aggravation of the original injury or a new and distinct injury, is compensable if it is the "direct and natural result" of a compensable injury. *Rogers v. Shaw,* 813 S.W.2d 397, 399–400 (Tenn.1991) (quoting 1 A. Larson, *The Law of Workmens' Compensation* § 13.11 (1990)). An injured worker may recover for a new injury or an aggravation of a compensable injury resulting from medical treatment on the theory that "the initial injury is the cause of all that follows." *McAlister v. Methodist Hosp. of Memphis,* 550 S.W.2d 240, 245 (Tenn.1977).

In support of the trial court's ruling, Mr. Williams points to Dr. Landsberg's deposition and report, as well as his own assertions and observations during his testimony about the condition of his knees. UPS, on the other hand, contends that the absence of references to Mr. Williams's right knee in Dr. Spindler's record of his fourteen visits with the patient strongly points to evidence of only one compensable injury to the left knee. UPS also asserts Dr. Spindler, the treating physician, had a better understanding and familiarity with Mr. Williams's condition than Dr. Landsberg, who examined him on only two occasions. In addition, UPS contrasts Dr. Spindler's academic appointment as Professor of Orthopedics at Vanderbilt University to Dr. Landsberg's lack of academic involvement as an additional reason to give greater weight to Dr. Spindler's opinions.

The trial court chose to credit Dr. Landsberg's theory of causation and specifically indicated that it believed Mr. Williams was credible and truthful. Our review of the entire record leads us to the conclusion that the trial court could have reasonably ruled in favor of either party on this issue. Therefore, we are unable to

find that the evidence preponderates against the trial court's ruling on this issue.

## V.

Finally, UPS contends that the trial court erred in crediting Dr. Landsberg's impairment rating of 18% to the left leg over Dr. Spindler's 10% rating. The arguments made by the parties on this issue are essentially the same as those made in connection with the compensability of the right knee injury. For the same reasons discussed above, we conclude that the evidence does not preponderate against the trial court's decision concerning this issue.

## VI.

We affirm the judgment of the trial court and remand the case for whatever further proceedings may be required. We also tax the costs of this appeal to United Parcel Service and Liberty Mutual Insurance Company and their sureties for which execution, if necessary, may issue.

## ORDER

It appears to the Court that the judgment was filed in this matter on September 28, 2010, in which the Panel's findings of fact and conclusions of law were adopted and affirmed and the decision of the Panel made the judgment of the Court. The Court directs the publication of the opinion of the Special Workers' Compensation Appeals Panel at Nashville, June 28, 2010 Session. The September 28, 2010 opinion shall be replaced with the opinion accompanying this order.

## JUDGMENT

PER CURIAM.

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference.

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Costs will be paid by United Parcel Service and Liberty Mutual Insurance Company and their sureties, for which execution may issue if necessary.