FILED
February 25, 2015
IN COURT OF
WORKERS' COMPENSATION
CLAIMS
Time: 10:10 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: Cathy Daniels

DOCKET #: 2014-01-0046

EMPLOYER: Cracker Barrel Old Country Store, Inc.

STATE FILE #: 84767-2014

ADMINISTRATOR: CCMSI

DATE OF INJURY: October 6, 2014

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing which Employee, Cathy Daniels, filed pursuant to Tennessee Code Annotated section 50-6-239(d), to determine if the provision of medical and temporary disability benefits is appropriate. Ms. Daniels filed the Request on January 2, 2015.

The undersigned Workers' Compensation Judge conducted an in-person Expedited Hearing on January 23, 2015. Attorney Carmen Ware represented Ms. Daniels. Attorney Catheryne Grant represented the Employer, Cracker Barrel Old Country Store, Inc. (Cracker Barrel), and its workers' compensation administrator, CCMSI. Considering the positions of the parties, the applicable law, the testimony of witnesses in open court, the exhibits admitted into evidence during the hearing, and the entire record, the Court finds that Ms. Daniels is entitled to additional medical benefits, but, at this time, is not entitled to the requested temporary disability benefits.

## ANALYSIS

### Issues

1. Whether Ms. Daniels is entitled to additional medical benefits.

2. Whether Ms. Daniels is entitled to temporary disability benefits.

1

## Evidence Submitted

The following witnesses testified in person:

- Cathy Daniels;
- Charles L. Daniels;
- Bobby Kenneth Bales;
- Jonathan Russell; and
- Jim Morrison.

The Court received into evidence the following exhibits:

- Exhibit 1—Workers' Compensation Injury Assessment Form signed by Dr. Shannon McCallie (1 page);
- Exhibit 2—Records of Fast Access Healthcare (2 pages);
- Exhibit 3—Records of Physician's Care, P. C. (21 pages);
- Exhibit 4—Chattanooga Outpatient Center MRI report (1 page);
- Exhibit 5—CCMSI Recorded Claims Statement of Cathy Daniels (16 pages), introduced for identification purposes only;
- Exhibit 6—Workers' Compensation Injury Assessment Questionnaire signed by Devin Martin and Dr. Kristopher Brent Meadows (1 page);
- Exhibit 7—Causation letter, with attached exhibits, signed by Dr. Kristopher Brent Meadows (51 pages);
- Exhibit 8—Affidavit of Tiffani Parton (2 pages);
- Exhibit 9—Affidavit of Alisha Dean, with attached exhibits (4 pages);
- Exhibit 10—Notice of Denial of Claim for Compensation (Form C-23) (1 page); and
- Exhibit 11—Wage Statement (Form C-41) (1 page).

The Court designated the following as the technical record:

- Petition for Benefit Determination;
- Dispute Certification Notice;
- Request for Expedited Hearing;
- Motion to Continue Expedited Hearing; and
- Motion to Determine Admissibility of Dr. Meadows' Opinion.

The Court did not consider documents attached to the above-designated unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings as allegations unless established by the evidence.

## History of Claim

Ms. Daniels is a server at the Cracker Barrel restaurant in East Ridge, Tennessee. Before

her work day began on October 6, 2014, Ms. Daniels experienced pain in both her knees. The pain worsened as she worked her shift. Approximately one hour before her shift ended, Ms. Daniels decided to ask off early because her knees hurt.

Ms. Daniels walked to the store office and approached the desk where Cracker Barrel's assistant manager, Jonathan Russell, sat. As she sat down in a chair to ask about leaving work early, Ms. Daniels twisted her right knee when her right foot became entangled with the chair leg. Ms. Daniels experienced severe right knee pain immediately upon coming to rest in the chair. Mr. Russell treated Ms. Daniels' knee with ice and called her husband to come to the store to transport her for medical care.

Mr. Russell offered Ms. Daniels a panel of physicians from which she selected Physician's Care, a walk-in clinic, for authorized treatment. On the same day, Ms. Daniels saw a physician's assistant (PA) at Physician's Care who suggested that she treat her right knee with ice and Ibuprofen, stay off her feet, and keep her right leg elevated (Ex. 3, p. 16). The PA placed restrictions on Ms. Daniels' activities, including her ability to stand and walk. Cracker Barrel did not accommodate these restrictions. A week later, a nurse practitioner at Physician's Care ordered physical therapy, which Cracker Barrel authorized (Ex. 3, p. 13).

Ms. Daniels returned to Physician's Care on a weekly basis until November 13, 2014. During this period, Ms. Daniels saw a physician on only one occasion, October 24, 2014 (Ex. 3, p. 9). PA Devin Martin ordered an MRI which was performed on November 8, 2014 (Ex. 3, p. 5; Ex. 4). The MRI revealed degenerative changes in Ms. Daniels' right knee, as well as a complex tear of the right medial meniscus encompassing both the posterior horn and the meniscal body (Ex. 4). On Ms. Daniels' last visit to Physician's Care, PA Martin referred her to an orthopedic surgeon and removed all restrictions except avoiding prolonged walking and standing (Ex. 3, pp. 2, 4).

On December 10, 2014, Cracker Barrel denied Ms. Daniels' claim, alleging that the condition in her right knee is personal and not work-related (Ex. 10). Cracker Barrel did not pay any temporary disability benefits, nor did it authorize the orthopedic referral made by PA Martin.

**Employee's Contentions**

Ms. Daniels admits that she experienced non-disabling pain in her knees prior to October 6, 2014. Ms. Daniels asserts, however, that she never missed work due to knee pain prior to October 6, 2014. Ms. Daniels claims that she tore the medial meniscus in her right knee when she twisted her knee at work on October 6, 2014. Ms. Daniels insists that it is the pain from the torn meniscus that currently disables her.

Ms. Daniels asks that the Court order Cracker Barrel to provide a panel of orthopedic surgeons as prescribed by the authorized treating practitioner at Physician's Care. She also asks that Cracker Barrel pay temporary disability benefits from the date of injury until the date she either returns to work, is released to return to work without restrictions, or attains maximum medical improvement from her work-related right knee injury.

In response to Cracker Barrel's argument that causation cannot be established by the opinion of a PA, Ms. Daniels contends that Cracker Barrel placed Physician's Care on its panel and should not be permitted to object to the admissibility of an opinion given by any practitioner who treated her at Physician's Care. Ms. Daniels also contends that, when Dr. Meadows signed the PA's causation report, he adopted as his own the causation opinion stated in the report. Lastly, Ms. Daniels asserts that the statement Dr. Meadows gave Cracker Barrel is inadmissible because Cracker Barrel asked him to consider false or unproven information in formulating his opinion.

## Employer's Contentions

Cracker Barrel contends that Ms. Daniels did not establish that her right knee injury arose primarily out of and in the course and scope of her employment. From a factual standpoint, Cracker Barrel argues that Ms. Daniels' claim fails because:

- she fell at a flea market and required emergency care a few weeks before the work injury allegedly occurred;
- she limped from knee pain when she came to work on the date of the alleged injury;
- she intended to request permission to leave work early due to knee pain before the alleged work injury occurred; and
- if she injured her knee as alleged, the injury is idiopathic.

Cracker Barrel also argues that Ms. Daniels introduced insufficient medical evidence to establish the work-relatedness of her alleged injury. It contends that the only opinion supporting the alleged compensability of Ms. Daniels' injury is provided by a PA who is not competent to give an admissible opinion on causation. Cracker Barrel insists that Dr. Meadows, the only physician who has treated Ms. Daniels' right knee injury, opined that he is unable to state that Ms. Daniels' injury is work-related.

## Findings of Fact and Conclusions of Law

### Standard Applied

When determining whether to award benefits, a Workers' Compensation Judge must decide whether, based on the evidence introduced at the Expedited Hearing, the moving party is likely to succeed on the merits at the Compensation Hearing. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6)(2014).

### Factual Findings

Upon consideration of the testimony in open court, the exhibits introduced as evidence, the arguments of the parties, and the entire record in this claim, the Court finds:

4

- Ms. Daniels' testimony that she injured her right knee when she twisted the knee as she sat in a chair at work on October 6, 2014 is credible; and
- that Ms. Daniels' injury is not idiopathic.

*Application of Law to Facts*

*Credibility of Ms. Daniels' testimony*

The Court finds credible Ms. Daniels' testimony that she injured her right knee at work on October 6, 2014. In making this finding, the Court is mindful of Ms. Daniels' admission that she experienced pain in her knees prior to the occurrence of the incident at work. The Court is also aware that a co-worker, Tiffani Patton, testified by Affidavit that, on the date of injury, she overheard Ms. Daniels tell other co-employees that she twisted her knee at a flea market (Ex. 8).

The fact that Ms. Daniels arrived at work on October 6, 2014 with knee pain does not disqualify her from receiving workers' compensation benefits. The Wage Statement corroborates Ms. Daniels' testimony that she did not experience disabling right knee pain prior to October 6, 2014 in that it establishes that Ms. Daniels earned between $200 to $400 per week in all but a few of the fifty-two (52) weeks preceding the date of injury (Ex. 11). The Wage Statement indicates that Ms. Daniels worked during all the fifty-two (52) weeks preceding the date of injury (Ex. 11). Additionally, Ms. Daniels worked for four (4) hours immediately prior to twisting her right knee. In consideration of the above-described facts, the Court finds that Ms. Daniels' pre-existing knee pain did not disable her prior to October 6, 2014.

In response to Ms. Patton's affidavit (Ex. 8), Ms. Daniels testified that she did not injure her right knee at a flea market and did not tell her co-employees that she did. Ms. Daniels explained that she hurt her right ankle, but not her right knee, when she fell at a flea market in August, 2014. She testified that she fully recovered from the ankle injury. The records of Fast Access Healthcare establish that, on August 19, 2014, Ms. Daniels received treatment for right ankle pain only (Ex. 2). The Wage Statement indicates that Ms. Daniels worked during the weeks between August 19, 2014 and the date of injury, earning weekly wages consistent with her earlier earnings history (Ex. 11). Based on the above facts, the Court gives little weight to the averment in Ms. Patton's affidavit.

Cracker Barrel's manager, Jim Morrison, testified that he considers Ms. Daniels to be an honest person. Additionally, the evidence demonstrated a stark difference between Ms. Daniels' physical abilities before and after October 6, 2014. Cracker Barrel's assistant manager Jonathan Russell's, testimony verified Ms. Daniel's testimony that, immediately after the October 6, 2014 twisting incident, Ms. Daniels experienced such severe right knee pain that Mr. Russell rolled her in a chair to the store's back door and assisted her into a vehicle to be transported to Physician's Care. From October 6, 2014 forward, the authorized practitioners placed restrictions on Ms. Daniels' work activities due to right knee pain (Ex. 3). A November 8, 2014 MRI revealed a complex tear in Ms. Daniels' right medial meniscus (Ex. 4). Based on the above facts, the Court finds that Ms. Daniels' testimony that she injured her right knee at work on October 6, 2014 is credible.

*Idiopathic Injury*

Cracker Barrel sought to establish that, if Ms. Daniels injured her right knee at work on October 6, 2014, the injury was idiopathic and, thus, not compensable. Specifically, Mr. Russell testified that he did not observe anything unusual about the way Ms. Daniels sat down immediately before she injured her right knee. Mr. Morrison testified that he reviewed a video of the incident and did not observe Ms. Daniels sit down in an unusual fashion.

These same witnesses testified that they viewed the incident from obstructed vantage points. Mr. Russell testified that the desk blocked his view of Ms. Daniels' right knee and foot. Mr. Morrison testified that he did not observe Ms. Daniels' right foot and knee in the video because he focused on the manner in which she sat down. Mr. Morrison also admitted that he testified from his memory of what he observed on the video, which he watched the day after Ms. Daniels reported her injury. He failed to review the video in preparation for the hearing because Cracker Barrel did not retain it on their computer surveillance system.

The Court finds that neither Mr. Russell's nor Mr. Morrison's testimony discredited Ms. Daniels' version of how she injured her right knee. Accordingly, the Court finds that Ms. Daniels injured her right knee when her right foot became entangled in a chair as she sat down at work.

The term "idiopathic" is defined as an act which is "unexplained in its origin." *See Thornton v. Thyssen Krupp Elevator Mfg.*, 2007 LEXIS 359, at p. 16 (Tenn. Work. Comp. Panel April 24, 2007), citing *Shearon v. Seaman*, 198 S.W.3d 209, 215 (Tenn. App. 2005). As discussed above, Ms. Daniels testified as to how she injured her right knee. The origin of Ms. Daniels' injury is not unexplained and, thus, the injury is not idiopathic.

*Medical Expert Opinion*

The Court's finding that Ms. Daniels' testimony as to the mechanism of injury is credible does not end the causation inquiry. Except in the most obvious, simple and routine cases, a claimant in a workers' compensation case must establish a causal relationship between the claimed injury and the employment activity by a preponderance of the **expert medical testimony**, as supplemented by the lay evidence (emphasis added). *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). Accordingly, the Court will address the sufficiency of the expert evidence introduced at the Expedited Hearing before deciding whether Ms. Daniels met her burden of proof on causation.

Prior to July 1, 2014, an injured worker could establish the causation, or work-relatedness, of a claim by credible lay testimony supported by equivocal medical expert opinion, such as an opinion that an incident at work "could be" the cause of an injury. *Williams v. UPS*, 328 S.W.3d 497, 504 (Tenn. 2010); *Tindall v. Waring Park Asso.*, 725 S. W. 2d 935, 937 (Tenn. 1987). For injuries or conditions arising on and after July 1, 2014, the Tennessee Workers' Compensation Law imposes a different standard applicable to the level of medical expert opinion necessary to establish causation.

"An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. §50-6-102(13)(B)(2014). "An injury causes death, disablement or the need for medical treatment only if it has been shown by a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or the need for medical treatment, considering all causes." Tenn. Code Ann. §50-6-102(13)(C)(2014). Tennessee Code annotated section 50-6-102(13)(D) provides: "'Shown to a reasonable degree of medical certainty' means that, **in the opinion of the physician,** it is more likely than not considering all causes, as opposed to speculation or possibility" (emphasis added).

Ms. Daniels sought to prove the causation of her injury through the introduction of a questionnaire. PA Devin Martin, who treated Ms. Daniels on her final three (3) visits at Physician's Care, wrote out responses to the questionnaire and signed it (Ex. 3, pp. 2-8). Dr. Kristopher Brent Meadows signed the questionnaire, but the questionnaire does not specifically indicate whether Dr. Meadows adopts the opinions given by Mr. Martin (Ex. 3, p. 1; Ex. 6).

In response to a question whether Ms. Daniels' October 6, 2014 right knee injury resulted from an aggravation of a pre-existing condition, PA Martin wrote that she "now has a meniscal tear" and that "[the tear] and effusion injury is [sic] most likely acute" (Ex. 3, p.1; Ex. 6). He further opined that the degenerative changes shown on the MRI of Ms. Daniels' right knee are "likely chronic" (Ex. 3, p. 1; Ex. 6).

Cracker Barrel requested Dr. Meadows' opinion as to whether "Ms. Daniels suffered an injury or aggravation for which her *employment contributed more than 50% to the cause of the injury, considering all causes"* (italics original) (Ex. 7, p. 2.). In response, Dr. Meadows wrote: "There is no way for me to quantify this based on the given information" (Ex. 7, p. 2).

Dr. Meadows' response to Cracker Barrel's causation questionnaire is not a medical opinion finding or denying causation. His response explains that he cannot "quantify" the cause of Ms. Daniels' injury. Dr. Meadows' response, however, negates any inference which might be made that, by signing Ms. Daniels' questionnaire, Dr. Meadows intended to adopt the opinions set forth by PA Martin therein. Accordingly, the only causation evaluation offered for consideration is that given by PA Martin in response to the questionnaire submitted by Ms. Daniel's attorney.

Tennessee Code Annotated section 63-19-101, et. seq. contains the Tennessee Physician Assistant Act. Section 63-19-106(a) provides that: "A physician assistant is authorized to perform selected medical services **only under the supervision of a licensed physician**" (emphasis added). In *Land v. Barnes,* 2008 Tenn. App. LEXIS 523, at *17 (Tenn. Ct. App. July 15, 2008), the Court observed that: "Since a physician's assistant may only render diagnostic or therapeutic services under the 'supervision, control and responsibility of a licensed physician,' there is considerable doubt that a physician's assistant would be competent to testify as to causation." While the *Land* opinion arose out of a medical malpractice claim, the above observation from the *Land* opinion is equally applicable to the issue of whether a PA may render an admissible causation opinion in a workers' compensation claim.

7

The evidentiary standards imposed by the July 1, 2014 amendments utilize the term "physician" when describing the expert opinion necessary to establish whether an injury arose primarily out of and in the course and scope of employment. The Tennessee Physician Assistant Act recognizes that a PA is not a physician and shall only practice under the supervision of a physician. Based on this authority, the Court finds that PA Martin's causation opinion does not meet the statutory standard set forth in Tennessee Code Annotated section 50-6-102(13)(D)(2014) since it is not the opinion of a physician.

*Medical Benefits*

"The employer... shall furnish, free of charge to the employee, such medical and surgical treatment...made necessary by accident as defined in this chapter." Tenn. Code Ann. §50-6-204(a)(1)(A)(2014). In furtherance of this statutory obligation, Cracker Barrel provided Ms. Daniels a panel which contained Physician's Care. Ms. Daniels selected Physician's Care for authorized treatment and, for approximately two (2) months, Cracker Barrel authorized her treatment there. During that time, Ms. Daniels received treatment by non-physician practitioners on six (6) of her seven (7) visits to Physician's Care. Cracker Barrel authorized physical therapy and an MRI ordered by the non-physician providers at Physician's Care.

PA Martin's November 13, 2014 treatment note indicates "we will refer to orthopedic surgical [sic] for options of repair to the medial meniscus" and that "orthopedic will pick up care of this patient from this point" (Ex. 3, p. 2). Although Cracker Barrel did not deny Ms. Daniels' claim for almost a month after the November 13, 2014 orthopedic referral (Ex. 10, it never authorized Ms. Daniels to see an orthopedic surgeon as ordered by PA Martin (Ex. 3, p. 2). Because Cracker Barrel included Physician's Care on the panel it provided Ms. Daniels and previously authorized treatment ordered solely by the non-physician practitioners at Physician's Care, the Court finds that Cracker Barrel violated its statutory obligation to provide reasonable and necessary medical treatment when it failed to authorize Ms. Daniels to see an orthopedic surgeon.

The Court finds merit in Ms. Daniels' contention that Cracker Barrel's inclusion of Physician's Care on its treatment panel disadvantaged her ability to prove causation. Regarding the injured worker's obligation to prove causation, Tennessee Code Annotated section 50-6-102(13)(E)(2014) provides that **"the opinion of the treating physician, selected by the employee from the employer's designated panel of physicians**...shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence" (emphasis added). The above-cited statutory provision indicates that the legislature intended that the availability of the treating physician's causation opinion is critical to the parties' consideration of their rights and obligations in a workers' compensation claim.

The injured worker must prove causation by medical expert testimony. *See* Tenn. Code Ann. §50-6-102(13)(C)(2014). Cracker Barrel's objection to PA Martin's causation opinion illustrates that an injured worker suffers a disadvantage in satisfying the burden of proof imposed by law when the predominance of her authorized treatment is provided by non-physician practitioners.

8

On the basis of the above considerations, the Court finds that the provision of reasonable and necessary medical treatment requires that Cracker Barrel provide Ms. Daniels a panel of orthopedic surgeons. Cracker Barrel shall authorize the physician Ms. Daniels selects to consider both her treatment needs and the issue of whether her right knee injury arose primarily out of and in the course and scope of employment.

*Temporary Disability Benefits*

Ms. Daniels has the burden of proving her entitlement to temporary disability benefits. *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978). In order to prove a *prima facie* case for temporary disability benefits, Ms. Daniels must prove several factors, including a causal connection between her work injury and her inability to work. *Gray v. Cullom Machine, Tool & Die, Inc.,* 152 S.W.3d 439, 443 (Tenn. 2004). In that the Court concluded that a PA cannot give an admissible opinion on causation, and only causation evaluation admitted into evidence is that given by PA Martin, the Court finds that Ms. Daniels did not prove entitlement to temporary disability benefits by medical expert opinion.

**IT IS, THEREFORE, ORDERED**:

1. Cracker Barrel shall promptly provide Ms. Daniels a panel of orthopedic surgeons. Cracker Barrel shall promptly schedule an appointment with the physician Ms. Daniels selects and shall authorize that physician to consider both her current treatment needs and whether her right knee injury arose primarily out of and in the course and scope of employment.
2. Ms. Daniels' request for temporary disability benefits is denied at this time.
3. This matter is set for Initial Hearing on April 1, 2015, at 10:00 a. m. Eastern Time. The Initial Hearing shall be conducted by telephone. The call-in numbers are 855-747-1721 (toll free) or 615-741-3061.
4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance, if any, with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**
5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

Initial Hearing:

An Initial Hearing has been set with Judge Thomas Wyatt, Court of Workers Compensation Claims, on April 1, 2015, at 10:00 a.m. Eastern Time. You must call 615-741-

2051 or toll free at 855-747-1721 to participate in the Initial Hearing.

Please Note: <u>You must call in on the scheduled date and time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).

ISSUED AND FILED WITH THE COURT OF WORKERS' COMPENSATION CLAIMS ON THE 25TH DAY OF FEBRUARY, 2015.

Judge Thomas Wyatt
Tennessee Court of Workers'
Compensation Claims
540 McCallie Avenue, Suite 600
Chattanooga, TN 37402

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2.  File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3.  Serve a copy of the Request for Appeal upon the opposing party.

4.  The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the

appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of February, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Carmen Y. Ware, Attorney | | | | | X | cyware@thewarelawfirm.com |
| Catheryne L. Grant, Attorney. | | | | | X | clg@feeneymurray.com |

Thomas Wyatt
Workers' Compensation Judge