FILED

July 20, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:15 AM



# COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Susan Scott, | ) | Docket No.: 2015-01-0055 |
| Employee, | ) | |
| v. | ) | State File No.: 14509 / 2015 |
| | ) | |
| Integrity Staffing Solutions, | ) | Date of Injury: February 10, 2015 |
| Employer, | ) | |
| And | ) | Judge: Thomas Wyatt |
| | ) | |
| Zurich American Ins. Co. | ) | |
| Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on June 23, 2015, upon the Request for Expedited Hearing filed by Susan Scott, the employee, on May 29, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if Integrity Staffing Solutions (Integrity), the employer, is obligated to provide medical and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Ms. Scott is entitled to the requested medical benefits.

## ANALYSIS

### Issues

1. *Whether Ms. Scott established that her left shoulder and upper back injury arose primarily out of and in the course and scope of employment.*

2. *Whether Ms. Scott is entitled to additional medical benefits.*

1

3. *Whether Ms. Scott is entitled to temporary disability benefits.*

**Evidence Submitted**

The Court admitted into evidence the exhibits identified below:

1. Affidavit of Susan Scott (3 pages);
2. Agreement Between Employee/Employer Choice of Physician (Form C-42) (1 page);
3. Request for Medical Information form completed by Dr. Neil Spitalny (3 pages);
4. Report of Dr. Neil Spitalny (1 page); and,
5. Documentation prepared by Ms. Scott (35 pages) (marked for identification purposes only subject to hearsay and relevancy objections made by counsel for Integrity).

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), filed March 30, 2015;
- Dispute Certification Notice (DCN), filed May 11, 2015; and,
- Request for Expedited Hearing filed May 29, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

The following witnesses provided in-person testimony:

- Ms. Scott;
- Houston Eaves; and,
- Jackson Sifford.

The parties stipulated that Ms. Scott's average weekly wage is $477.44, which calculates to a compensation rate of $318.31.

**History of Claim**

Ms. Scott is a fifty- (50) year-old resident of Soddy-Daisy, Tennessee. On the date of injury, February 10, 2015, she had worked approximately three (3) months as a picker at the Amazon.com (Amazon) distribution center in Chattanooga, Tennessee. Ms. Scott worked at Amazon through Integrity, a staffing agency.

Ms. Scott jammed her left arm when she pushed a cart into a pallet while picking merchandise for shipment. She felt immediate pain in her left shoulder and left upper back. Ms. Scott reported the injury to Integrity's area manager, who sent her for treatment at AmCare, an on-site medical facility at Amazon. A nurse at AmCare treated Ms. Scott with over-the-counter medication and Biofreeze before returning her to work.

Ms. Scott worked with pain until February 23, 2015, when she asked the nurse at AmCare to send her to a doctor (Ex. 2). She met with Integrity's safety manager, who provided her a panel from which she selected Dr. Neil Spitalny (Ex. 2). Due to pain from her left shoulder injury, Ms. Scott did not work while waiting to see Dr. Spitalny.

Ms. Scott did not keep her first scheduled appointment with Dr. Spitalny due to snow, eventually seeing him on March 3, 2015 (Ex. 3). Ms. Scott told Dr. Spitalny about the left shoulder injury she sustained while working for Integrity. She testified that Dr. Spitalny asked whether she had sustained work-related injuries in the past and also inquired extensively about a work-related back injury that she related to him.

Dr. Spitalny concluded that Ms. Scott "sustained no injury at all from the alleged February 10, 2015 injury" (Ex. 4). Dr. Spitalny opined that Ms. Scott's problems "are related to her chronic back pain or deconditioning or lack of mobility of the cervical spine, her osteoporosis, and mild pre-existing shoulder degenerative changes" (Ex. 4). In his report, he opined that Ms. Scott was not capable of "doing any heavy lifting" (Ex. 4). In response to inquiries in a printed Medical Information form provided him by Integrity, Dr. Spitalny diagnosed Ms. Scott with "chronic back pain" and released her to work with unspecified restrictions due to "chronic back pain [and] narcotic usage" (Ex. 3, p. 1).

Ms. Scott returned to work on March 4, 2015. She testified that she was physically able to do her job despite left shoulder pain. Integrity took Ms. Scott off work due to the restrictions placed by Dr. Spitalny. Ms. Scott testified that she worked for "a day or two (2)" after she saw Dr. Spitalny, while Integrity's manager testified she only worked on March 4, 2015, and then only for an hour. Integrity has a policy that its employees cannot work under restrictions. The policy includes the requirement that, once a physician places an employee on restrictions, the employee cannot return to work until a physician releases the employee to full-duty and he or she signs a Certificate of Fitness form.

Over the ensuing weeks, numerous disputes arose between Ms. Scott and the management at Integrity. Ms. Scott refused to sign the Certificate of Fitness form because its language stated that her injury was not work-related. Integrity agreed that Ms. Scott could sign a Certificate of Fitness form after redacting the language to which she did not agree, but she declined to do so. Ms. Scott's private physician would not give her a release to return to work because he did not take her off work. After a period of absence from work due to the above disputes, Integrity terminated Ms. Scott's

employment.

Ms. Scott filed a PBD on March 3, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation and the Mediation Specialist filed the DCN on May 11, 2015.

During the Expedited Hearing, Integrity moved for dismissal following both the conclusion of Ms. Scott's case and at the closing of the evidentiary phase of the hearing. On both occasions, Integrity argued that the Court should dismiss the claim because Ms. Scott did not introduce an expert medical opinion to rebut Dr. Spitalny's opinion that her injury was not work-related. The Court overruled both motions to dismiss.

### Ms. Scott's Contentions

Ms. Scott contends that she had no shoulder problems before suffering the injury at Integrity. She claims that she complied with all of Integrity's instructions regarding giving notice and saw the providers to whom Integrity sent her. Accordingly, she contends that Integrity wrongfully denied her medical and temporary disability benefits.

### Integrity's Contentions

Integrity contends that the only expert medical opinion in evidence is that of Dr. Spitalny, who opined that Ms. Scott's alleged injury did not arise primarily out of and in the course and scope of employment. Accordingly, Integrity asks that the Court deny Ms. Scott's request for benefits because she has not shown that, at a hearing on the merits, she will likely prevail in establishing that her shoulder condition is work-related.

### Findings of Fact and Conclusions of Law

#### *Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk Comp App Bd LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

#### *Factual Findings*

4

Upon consideration of the testimony in open court, the exhibits introduced by the parties, the argument of counsel for the parties, and the record in this claim, the Court makes the following factual findings in the Expedited Hearing conducted June 23, 2015:

- On or about February 10, 2015, Ms. Scott was employed through Integrity as a picker at the Amazon distribution center in Chattanooga, Tennessee;
- On or about February 10, 2015, Ms. Scott felt pain in her left shoulder and left upper back area when she pushed a cart into a pallet;
- Ms. Scott reported her injury to Integrity on the date of injury;
- Ms. Scott selected Dr. Neil Spitalny from a panel that Integrity provided her;
- Ms. Scott saw Dr. Spitalny on March 3, 2015, following which visit he opined that she did not sustain an injury while working at Amazon through Integrity;
- Dr. Spitalny released Ms. Scott to return to work under restrictions placed because of a chronic back injury and the fact she took prescribed narcotic medication; and,
- Based on Dr. Spitalny's opinion that she did not sustain a work-related injury on or about February 10, 2015, Integrity refused to provide Ms. Scott further workers' compensation benefits.

*Application of Law to Facts*

*Causation*

*Discussion of Applicable Legal Authority*

The 2013 reforms to the Workers' Compensation Law define a compensable injury as one that "arises primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13) (2014). The statute expands the above definition by providing that "[a]n injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes" and requires that entitlement to workers' compensation benefits be "shown to a reasonable degree of medical certainty." Tenn. Code Ann. § 50-6-102(13)(B) and (C)(2014). A physician giving a causation opinion must state the opinion based on a conclusion that the work "more likely than not considering all causes, as opposed to speculation and possibility" caused the injury forming the basis of the claim. Tenn. Code Ann. § 50-6-102(13)(D)(2014).

The Supreme Court has long held in workers' compensation cases that an injured

employee may establish causation of his or her injury by a combination of medical expert and lay opinion. *See, e. g., White v. Werthan Indus.*, 824 S.W.2d 158, 159 (Tenn. 1992); *Smith v. Empire Pencil Co.*, 781 S.W.2d 833, 835 (Tenn. 1989). In fact, the Supreme Court in *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991), held that, "[w]hile causation and permanency of an injury must be proved by expert medical testimony, such testimony must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Id.*

The 2013 reforms to the Workers' Compensation Law added the word "primarily" to the definition of a work-related injury and specified the standard under which medical experts are to render causation opinions. However, the legislature did not enact language that diminished the role of credible lay testimony in the determination of whether a claimed injury is compensable. In *McCord, supra,* the Workers' Compensation Appeals Board held that reliance on precedent from the Tennessee Supreme Court that predates the 2013 reforms is proper "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of the pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." 2015 TN Wrk Comp Bd LEXIS 6 at *19, n4. After considering the authority cited in the preceding paragraph in view of the principles set forth in *McCord*, the Court finds that said case authority related to the value of lay testimony remains good law.

### Assessment of Lay Testimony

In analyzing this claim, the Court first assesses the credibility of Ms. Scott's testimony that she suffered pain in the left shoulder and upper back when she pushed a cart into a pallet while working at Amazon through Integrity. Ms. Scott testified clearly and without wavering in describing the circumstances of her injury. Neither of the management representatives who testified at the Expedited Hearing denied the occurrence of the incident described by Ms. Scott. Dr. Spitalny's report corroborates Ms. Scott's in-person testimony about the mechanism of injury in that it records that she reported suffering the subject injury when she "was pushing a cart…, coming around a corner…she jammed into a pallet." On the basis of the evidence introduced at the Expedited Hearing, the Court finds that Ms. Scott felt pain in her left shoulder and upper back when she pushed a cart into a pallet while at work on February 10, 2015.

### Assessment of Dr. Spitalny's Opinion

The medical evidence introduced at the Expedited Hearing consisted of Dr. Spitalny's report (Ex. 4) and the Integrity Request for Medical Information form that Dr. Spitalny partially completed (Ex. 3). The Court notes that, in examining Ms. Scott, Dr.

Spitalny did not order diagnostic testing (Ex. 4). The Court further notes that Dr. Spitalny's records do not indicate that he reviewed copies of records documenting her previous treatment and diagnostic history (Exs. 3, 4). Nonetheless, Dr. Spitalny wrote in his report that Ms. Scott "sustained no injury at all from the alleged February 10, 2015 injury" (Ex. 4). He, instead, related her pain to "chronic back pain or deconditioning or lack of mobility of the cervical spine, her osteoporosis, and mild pre-existing shoulder degenerative changes" (Ex. 4).

After physically examining Ms. Scott, Dr. Spitalny noted that Ms. Scott had "mild tenderness in the insertion of the deltoid" and "mild tenderness in the left trapezial region" (Ex. 4). The *Merriam-Webster Medical Dictionary* defines the deltoid as "a large triangular muscle that covers the shoulder joint," MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/deltoid (last visited July 20, 2015), and the trapezius as "a large flat triangular superficial muscle of each side of the upper back," MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/trapezius (last visited July 20, 2015). Accordingly, Dr. Spitalny's examination findings corroborate Ms. Scott's claim that she injured her left shoulder and upper back while working at Amazon through Integrity.

Additionally, Dr. Spitalny did not note in his examination findings that Ms. Scott reported neck or back pain, nor did he note that she exhibited neck or back findings. Accordingly, the Court finds that there is no empirical evidence to corroborate Dr. Spitalny's opinion that Ms. Scott's pain generated from pre-existing neck or back conditions. The Court also notes that, for three (3) months prior to the date of injury, Ms. Scott was physically able to work regularly at Amazon through Integrity. Accordingly, the Court finds there is no evidence that corroborates Dr. Spitalny's opinion that general deconditioning accounted for the pain Ms. Scott reported, and the deltoid and trapezius tenderness he noted, during his examination.

Tennessee Rule of Evidence 703 states that "[t]he court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." The Court finds that Dr. Spitalny rendered his causation opinion without the benefit of diagnostic data or documentation of Ms. Scott's prior treatment and diagnostic history. The Court also finds that Dr. Spitalny's opinion that pre-existing neck and back conditions account for Ms. Scott's pain is inconsistent with Ms. Scott's unrebutted testimony as to how she was injured and how her injury affected her. Accordingly, the Court finds that Dr. Spitalny's opinions lack trustworthiness and do not assist the Court.

*Medical Benefits*

On the DCN filed by the Mediating Specialist, the parties certified the following issue for the Court's consideration: "Whether Employee is entitled to additional medical

care as recommended by a physician." In her closing statement, Ms. Scott stated that she continues to suffer from a left shoulder sprain. The Court implies from that statement that Ms. Scott seeks continued medical benefits. Integrity counters that Ms. Scott has not established by expert medical opinion that her left shoulder problem is work-related and, as such, it is not responsible for future treatment of her alleged injury.

In *Lindsey v. Strohs Companies*, 830 S.W.2d 899, 902-903 (Tenn. 1992), and *Buchanan v. Mission Ins. Co.*, 713 S.W.2d 654, 656 (Tenn. 1986), the Supreme Court held that the Workers' Compensation Law imposes "concomitant," or concurrent, duties on injured employees and their employers. The injured employee must timely report the injury. The employer must offer a treatment panel. If the injured employee expects the employer to pay for treatment of the work injury, he or she must obtain treatment from a physician selected from the employer's panel.

Here, Ms. Scott gave timely notice of a claimed work-related left shoulder and upper neck injury. Integrity offered her a panel from which she selected Dr. Spitalny. Integrity contends that, owing to his status as an authorized treating physician, Dr. Spitalny's opinion that Ms. Scott's injury is not work-related effectively terminates her claim. The Court, however, questions whether the manner in which Dr. Spitalny interacted with Ms. Scott constitutes *treatment* of her reported work injury. If the interaction between Ms. Scott and Dr. Spitalny cannot legitimately be considered treatment, Ms. Scott remains entitled to medical benefits.

The Court finds nothing in the records introduced in the Expedited Hearing that indicates Dr. Spitalny treated Ms. Scott's left shoulder and upper back complaints. Although he noted examination findings consistent with Ms. Scott's report of a left shoulder and upper back injury, Dr. Spitalny neither ordered diagnostic testing nor offered any treatment. The Court finds that Dr. Spitalny geared his interaction with Ms. Scott more toward formulating a causation opinion than toward providing treatment.

Tennessee Code Annotated section 50-6-204(a)(1)(G) (2014) provides that, when a physician selected from a panel "declines to accept the employee as a patient *for the purpose of providing treatment* to the employee for his workers' compensation injury" (emphasis added), the employee may select another physician from the panel or ask the employer to provide an additional physician from which he or she may select a treating physician. Other language in the above-referenced provision provides that an employee is entitled to replace a physician selected from a panel "who refused to accept the injured employee as a patient *for the purpose of treating* the employee's workers' compensation injury" (emphasis added).

While rendering a causation opinion constitutes an aspect of the "treatment" contemplated by an authorized treating physician by section 50-6-204(a)(1)(G) (2014), such does not constitute the entirety of what is required, even when the physician

8

concludes that the injury is not work-related. In *Mitchell v. Kayem,* 54 S.W.2d 775, 781 (Tenn. App. 2001), a medical malpractice case, the Tennessee Court of Appeals quoted the following definition of "treatment" found in the 1993 edition of the *Merriam-Webster's Medical Desk Dictionary*: "[t]reatment is defined as 'the action or manner of treating a patient medically or surgically.'" Accordingly, the Court finds that the terms "treatment" and "treating" in section 50-6-204(a)(1)(G) (2014) contemplate that the authorized treating physician will concurrently medically respond to the injured worker's reports of pain and physical restriction while formulating a causation opinion.

For the reasons discussed above, the Court finds that Dr. Spitalny did not offer the meaningful examination contemplated under the Tennessee Workers' Compensation Law by a physician formulating an opinion on the crucial issue of the causation of Ms. Scott's claimed work injury. The Court also questions whether Dr. Spitalny exhibited the legitimate willingness to treat Ms. Scott's properly-reported injury in the manner contemplated by the Tennessee Workers' Compensation Law. Accordingly, the Court finds that Dr. Spitalny constructively declined to accept Ms. Scott as a patient and, pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(G), Integrity is required to allow Ms. Scott to select another authorized treating physician from the original panel it provided her or, alternatively, to provide her another choice of competent physicians from which she can select an authorized treating physician.

*Temporary Disability Benefits*

In *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978), the Supreme Court held that, to recover temporary disability benefits, an injured worker must prove he or she is disabled from working due to a work injury. Ms. Scott did not introduce expert medical opinion that she was disabled from working during any period in which she did not work. Additionally, she testified that, as of March 4, 2015, she was able to work even though she experienced left shoulder pain. Accordingly, the Court finds that Ms. Scott has not come forward with sufficient evidence from which this Court can conclude that she is likely to prevail at a hearing on the merits that she is entitled to temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Ms. Scott's work-related injury shall be paid and provided by Integrity or its workers' compensation carrier as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by Integrity or its workers' compensation carrier expeditiously providing Ms. Scott with the opportunity to replace Dr. Spitalny by selecting an authorized treating physician from either the panel from which she selected Dr. Spitalny or another list of physicians.

9

2. This matter is set for Initial Hearing on September 15, 2015, at 10:00 a.m. Eastern Time.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 20ᵗʰ day of July, 2015.**

**Thomas Wyatt, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with Judge Thomas Wyatt, Court of Workers' Compensation Claims on September 15, 2015, at 10:00 a.m. Eastern Time. You must call 615-741-3061 or toll free at 855-747-1721 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of

10

Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten (10) calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten (10) calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 20th day of July, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Susan Scott, Self-Represented | | | X | Susanlscott01@gmail.com |
| Charlie Poss, Attorney | | | X | Charlie.poss@leitnerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

12